Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:      (818) 532-6449
Email:          jpafiti@pomlaw.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:      (212) 661-1100
Facsimile:      (212) 661-8665
Email:          jalieberman@pomlaw.com
                ahood@pomlaw.com
                mgorrie@pomlaw.com
(*additional counsel on signature page*)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN H. ROBB, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FITBIT INC., JAMES PARK, and WILLIAM R. ZERELLA,<br><br>Defendants | Case No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.      Plaintiff, individually and on behalf of all the other persons similarly situated, by plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Fitbit Inc. ("Fitbit" or the "Company"), as well as conference call transcripts and media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

2.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Fitbit securities: (1) pursuant and/or traceable to FitBit's false and misleading Registration Statement and Prospectus issued in connection with the Company's initial public offering on or about June 18, 2015 (the "IPO" or the "Offering"); and/or (2) on the open market between June 18, 2015 and January 6, 2016, both dates inclusive, seeking to recover compensable damages caused by defendants' violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") (the "Class").

## BACKGROUND

3.      Fitbit manufactures and provides wearable fitness-tracking devices worldwide. The Company's main products are wrist bands and clippable devices that purport to monitor a user's fitness activity by tracking his/her health and fitness activities.  Among the Company's products are Fitbit Charge HR ("Charge HR"), a wireless heart rate and activity wristband, and Fitbit Surge ("Surge"), a fitness watch that consists of a GPS watch, heart rate tracker, activity tracker, and smartwatch. Fitbit Inc. sells its products primarily through retailers and distributors.

2

4.      The Company was formerly known as Healthy Metrics Research, Inc. and changed its name to Fitbit, Inc. in October 2007.  The Company was founded in 2007 and is headquartered in San Francisco, California.  Fitbit's stock trades on the NYSE under the ticker symbol "FIT."

5.      On or about June 18, 2015, Fitbit completed its IPO, issuing 36,575,000 shares and raising net proceeds of approximately $732 million.

6.      Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Fitbit's heart rate monitoring technology was inaccurate and did not consistently deliver accurate heart rate readings during exercise; (ii) the inaccuracy of Fitbit's heart rate monitoring technology posed serious health risks to users of Fitbit's products; and (iii) as a result of the foregoing, Fitbit's public statements were materially false and misleading at all relevant times.

7.      On January 6, 2016, a class action lawsuit was reported as filed against Fitbit in the U.S. District Court for the Northern District of California, alleging that the heart rate monitoring systems on the Company's Charge HR and Surge devices were dangerously inaccurate and posed serious health risks to users (*McLellan et al. v. Fitbit, Inc.*, 3:16-cv-00036 (N.D. Cal. Jan. 5, 2016) (the "Fitbit Consumer Class Action").  The claims against Fitbit include violations of California's Unfair Competition Law and Consumers Legal Remedies Act, common law fraud, and unjust enrichment.

8.      On this news, Fitbit's stock fell $1.40, or 5.8%, to close at $22.90 on January 6, 2016.

9.      As a result of Defendants' false and/or misleading statements, Fitbit securities traded at inflated prices.  However, after disclosure of Defendants' false and/or misleading statements, Fitbit's stock suffered a precipitous decline in market value, thereby causing significant losses and damages to Plaintiff and other Class members.

3

**JURISDICTION AND VENUE**

10.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

12.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the alleged Defendant Fitbit maintains its principal executive offices in this District.

13.     In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

14.     Plaintiff purchased or otherwise acquired Fitbit common stock as described in the attached certification and was damaged by the revelation of the alleged corrective disclosure.

15.     Defendant Fitbit is incorporated in Delaware, and its stock trades on the NYSE under the ticker symbol "FIT."  The Company's corporate headquarters are located at 405 Howard Street, Suite 550, San Francisco, California 94105.

16.     Defendant James Park ("Park") has served at all relevant times as Chief Executive Officer, Chairman, and President of Fitbit.

4

17.     Defendant William R. Zerella ("Zerella") has served at all relevant times as Chief Financial Officer of Fitbit.

18.     The defendants named in ¶¶ 16-17 are sometimes referred to herein as the "Individual Defendants."

### SUBSTANTIVE ALLEGATIONS

#### Background

19.     Fitbit manufactures and provides wearable fitness-tracking devices worldwide. The Company's main products are wrist bands and clippable devices that purport to monitor a user's fitness activity by tracking his/her health and fitness activities.  Among the Company's products are Charge HR, a wireless heart rate and activity wristband, and Surge, a fitness watch that consists of a GPS watch, heart rate tracker, activity tracker, and smartwatch. Fitbit Inc. sells its products primarily through retailers and distributors.

20.     The Company was formerly known as Healthy Metrics Research, Inc. and changed its name to Fitbit, Inc. in October 2007.  The Company was founded in 2007 and is headquartered in San Francisco, California.  Fitbit's stock trades on the NYSE under the ticker symbol "FIT."

21.     On May 7, 2015, Fitbit filed a registration statement on Form S-1 with the SEC in connection with the IPO.  The registration statement was subsequently amended several times, with the final amended registration statement filed on Form S-1/A with the SEC on June 16, 2015 (collectively, the "Registration Statement").

22.     The Registration Statement contained a preliminary prospectus.  The final prospectus (the "Prospectus") was filed with the SEC on June 18, 2015.

23.     On June 17, 2015, the SEC declared the Registration Statement effective.

24.     On or about June 18, 2015, the Company completed its IPO, issuing 36,575,000 shares and raising net proceeds of approximately $732 million.

**The Alleged False and Misleading Statements**

25.      On June 18, 2015, Fitbit filed its Prospectus with the SEC, which forms part of the Registration Statement.  In the Prospectus, the Company stated, in relevant part:

**Our Competitive Strengths—What Sets Us Apart**

We believe the following strengths will allow us to maintain and extend our leadership position:

- ***Leading market position and global brand.*** Our singular focus on building a connected health and fitness platform, coupled with our leading market share, has led to our brand becoming synonymous with the connected health and fitness category. According to The NPD Group, we had the highest selling connected activity trackers in the United States in the first quarter of 2015, with an 85% share of the U.S. connected activity tracker market, by dollars, up from 70% for the year 2014 and 59% for the year 2013. In addition, according to The NPD Group, Fitbit Surge, which we began selling in December 2014, was the highest selling GPS fitness watch in the United States in the first quarter of 2015, with a 61% share of the U.S. GPS fitness watch market, by dollars, up from 3% in 2014.*

. . .

- ***Advanced, purpose-built hardware and software technologies.*** Our connected health and fitness devices leverage industry-standard technologies, such as Bluetooth low energy, as well as proprietary technologies, such as our PurePulse continuous heart rate tracking, and our algorithms that more accurately measure and analyze user health and fitness metrics. Our online and mobile apps provide in-depth analysis and guidance and our highly-scalable cloud infrastructure enables millions of users around the world to engage with our platform in real-time.

. . .

**Our Devices**

We believe everyone's approach to fitness is different, so we have created products with a wide variety of styles, sizes, features, and price points.

. . .

- ***Fitbit Charge HR*** is a wireless heart rate and activity wristband that has all the features available on the Fitbit Charge and also includes our proprietary PurePulse heart rate tracking technology. Fitbit Charge HR has a U.S. MSRP of $149.95.

- ***Fitbit Surge*** is our fitness "super watch" that combines popular features of a GPS watch, heart rate tracker, activity tracker, and smartwatch. Fitbit Surge has a U.S. MSRP of $249.95.

. . .

**Our Users**

***Active users*** exercise regularly to reach their fitness goals through activities such as running, using cardio equipment, and playing sports recreationally. As a result, these users are often interested in monitoring exercise intensity through heart rate tracking in addition to activity tracking. We primarily market the Fitbit Charge HR to Active users.

***Performance users*** train regularly to improve their performance and achieve their personal bests. These users participate in endurance sports and fitness activities with higher intensity and longer duration, such as interval or distance running and cycling, and thrive on personal improvement and competition. Accordingly, these users are interested in GPS tracking of speed, distance, and exercise routes, in addition to heart rate and daily activity tracking. We primarily market the Fitbit Surge to Performance users.

26.     The Registration Statement was signed by the Individual Defendants.

27.     On August 5, 2015, Fitbit issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 8-K").  For the quarter, the Company reported net income of $17.68 million, or $0.07 per diluted share, on revenue of $400.41 million, compared to net income of $14.75 million on revenue of $113.57 million for the same period in the prior year.

28.     On August 7, 2015, Fitbit filed a quarterly report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q2 2015 8-K (the "Q2 2015 10-Q").

29.     The Q2 2015 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.     On November 2, 2015, Fitbit issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the quarter ended September 30, 2015

(the "Q3 2015 8-K").  For the quarter, the Company reported net income of $45.83 million, or $0.19 per diluted share, on revenue of $409.26 million, compared to net income of $68.91 million on revenue of $152.86 million for the same period in the prior year.

31.     In the Q3 2015 8-K, under the heading "Third Quarter 2015 Financial Highlights," Fitbit announced that "Charge, Charge HR and Surge comprised 79% of revenue."

32.     On November 2, 2015, Fitbit also filed a quarterly report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q3 2015 8-K (the "Q3 2015 10-Q").

33.     The Q3 2015 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.     On November 2, 2015, Fitbit filed a registration statement and prospectus on Form S-1 with the SEC in connection with a secondary offering of the Company's securities (the "Secondary Offering S-1").  In the Secondary Offering 424B4, Fitbit stated, in relevant part:

**Our Competitive Strengths—What Sets Us Apart**

. . .

- ***Advanced***, ***purpose-built hardware and software technologies.*** Our connected health and fitness devices leverage industry-standard technologies, such as Bluetooth low energy, as well as proprietary technologies, such as our PurePulse continuous heart rate tracking, and our algorithms that more accurately measure and analyze user health and fitness metrics. Our online and mobile apps provide in-depth analysis and guidance and our highly-scalable cloud infrastructure enables millions of users around the world to engage with our platform in real-time.

. . .

**Our Devices**

We believe everyone's approach to fitness is different, so we have created products with a wide variety of syles, sizes, features, and price points.

8

. . .

- **Fitbit Charge HR** is a wireless heart rate and activity wristband that has all the features available on the Fitbit Charge and also includes our proprietary PurePulse heart rate tracking technology. Fitbit Charge HR has a U.S. MSRP of $149.95.

- **Fitbit Surge** is our fitness "super watch" that combines popular features of a GPS watch, heart rate tracker, activity tracker, and smartwatch. Fitbit Surge has a U.S. MSRP of $249.95.

. . .

**Our Users**

. . .

***Active users*** exercise regularly to reach their fitness goals through activities such as running, using cardio equipment, and playing sports recreationally. As a result, these users are often interested in monitoring exercise intensity through heart rate tracking in addition to activity tracking. We primarily market the Fitbit Charge HR to Active users.

***Performance users*** train regularly to improve their performance and achieve their personal bests. These users participate in endurance sports and fitness activities with higher intensity and longer duration, such as interval or distance running and cycling, and thrive on personal improvement and competition. Accordingly, these users are interested in GPS tracking of speed, distance, and exercise routes, in addition to heart rate and daily activity tracking. We primarily market the Fitbit Surge to Performance users.

35.     On November 3, 2015, defendant Park was interviewed for a Bloomberg Radio segment entitled "The Bloomberg Advantage," a transcript of which Fitbit subsequently filed with the SEC on Form FWP on November 6, 2015 (the "Bloomberg Interview Transcript").  In the Bloomberg Interview Transcript, defendant Park stated, in part:

Sometimes we just have to wait for technology to really reach maturity, so for instance, our Pure Pulse optical heart rate technology, which is in our Charge HR and Surge devices took over three years to develop, and so, you know, that's resulted in two products which are incredible leaders in the categories.  So Fitbit Charge HR is a number one wearable activity tracking device in the market today and Fitbit Surge is the number one GPS fitness watch, so I think that's a great example of how our technology development has resulted in really break-through products.

36.     On November 9, 2015, Fitbit filed an amended registration statement and prospectus on Form S-1/A with the SEC in connection with a secondary offering of the Company's securities (the

"Secondary Offering S-1/A").   In the Secondary Offering S-1/A, Fitbit reiterated the statements contained in the Company's Secondary Offering S-1 described above at ¶ 34.

37.    On November 13, 2015, Fitbit filed a prospectus on Form 424B4 with the SEC in connection with a secondary offering of the Company's securities (the "Secondary Offering 424B4"). In the Secondary Offering 424B4, the Company reiterated the statements contained in the Company's Secondary Offering S-1 described above at ¶¶ 34 and 36.

38.    The statements referenced in ¶¶ 25-37 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Fitbit's heart rate monitoring technology was inaccurate and did not consistently deliver accurate heart rate readings during exercise; (ii) the inaccuracy of Fitbit's heart rate monitoring technology posed serious health risks to users of Fitbit's products; and (iii) as a result of the foregoing, Fitbit's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

39.    On January 6, 2016, a class action lawsuit was reported as filed against Fitbit in the U.S. District Court for the Northern District of California, alleging that the heart rate monitoring systems on the Company's Charge HR and Surge devices were dangerously inaccurate and posed serious health risks to users (*McLellan et al. v. Fitbit, Inc.*, 3:16-cv-00036 (N.D. Cal. Jan. 5, 2016)). The claims against Fitbit include violations of California's Unfair Competition Law and Consumers Legal Remedies Act, common law fraud, and unjust enrichment.

40.    Specifically, the complaint in the Fitbit Consumer Class Action alleged that by understating a user's heart rate, the inaccurate heart rate monitoring systems in Fitbit's Charge HR and Surge devices created a risk of life-threatening overexertion.  For example:

At an intense personal training session in mid-June 2015, Plaintiff['s] personal trainer manually recorded her heart rate, which was 160 beats per minute ("bpm").  In stark contrast, her Charge HR indicated her heart rate was only 82 bpm.  Plaintiff Black was approaching the maximum recommended heart rate for her age, and if she had continued to rely on her inaccurate PurePulse Tracker, she may well have exceeded it, thereby jeopardizing her health and safety.

41.     On this news, Fitbit's stock fell $1.40, or 5.8%, to close at $22.90 on January 6, 2016.

42.     As a result of Defendants' false and/or misleading statements, Fitbit securities traded at inflated prices.  However, after disclosure of Defendants' false and/or misleading statements, Fitbit's stock suffered a precipitous decline in market value, thereby causing significant losses and damages to Plaintiff and other Class members.

**CLASS ACTION ALLEGATIONS**

43.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class (as defined *supra* at ¶ 2).   Excluded from the Class are defendants and their family members, directors and officers of Fitbit and their families and affiliates.

44.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Fitbit has more than 100 million shares of stock outstanding, owned by hundreds or thousands of persons.

45.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)     Whether the Securities Act was violated by defendants;

(b)     Whether the Exchange Act was violated by defendants;

(c)     Whether defendants omitted and/or misrepresented material facts;

11

(d)     Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(e)     Whether defendants knew or recklessly disregarded that their statements were false and misleading;

(f)     Whether the price of Fitbit common stock was artificially inflated; and

(g)     The extent of damage sustained by Class members and the appropriate measure of damages.

46.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

47.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

48.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## NO SAFE HARBOR

49.     Fitbit's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") were ineffective to shield those statements from liability.

50.     The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Fitbit who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when

12

made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET

51.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts;

(b)     The omissions and misrepresentations were material;

(c)     The Company's stock traded in an efficient market;

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e)     Plaintiff and other members of the Class purchased Fitbit common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

52.     At all relevant times, the market for Fitbit's common stock was efficient for the following reasons, among others:

(a) As a regulated issuer, Fitbit filed periodic public reports with the SEC; and

(b) Fitbit regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services

53.     As a result of the foregoing, the market for Fitbit's securities promptly digested current information regarding Fitbit from all publicly available sources and reflected such information in Fitbit's stock price.  Under these circumstances, all purchasers of Fitbit's securities at relevant times

suffered similar injury through their purchases of Fitbit's securities at artificially inflated prices, and a presumption of reliance applies.

## COUNT I
### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder Against All Defendants

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     Defendants carried out a plan, scheme and course of conduct which was intended to and did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Fitbit's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

56.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Fitbit securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

57.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business and future prospects of Fitbit as specified herein.

58.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Fitbit's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Fitbit and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Fitbit securities.

59.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company at all relevant times and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's business prospects and operations; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's operations and business projects at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

60.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect

of concealing the Company's flawed manufacturing processes, thereby artificially inflating price of its securities. As demonstrated by Defendants' omissions and misstatements of the Company's business strategy, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

61.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Fitbit securities was artificially inflated. In ignorance of the fact that market prices of Fitbit's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class acquired Fitbit securities at artificially high prices and were or will be damaged thereby.

62.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the Company's flawed manufacturing processes, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Fitbit securities, or, if they had acquired such securities, they would not have done so at the artificially inflated prices that they paid.

63.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities.

16

65.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II
## Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     The Individual Defendants acted as controlling persons of Fitbit within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

68.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

69.     As set forth above, Fitbit and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

17

70.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities.

71.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**COUNT III**
**Violation of Section 11 of**
**The Securities Act Against All Defendants**

72.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

73.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against the Individual Defendants.

74.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

75.     Fitbit is the registrant for the IPO. Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

76.     As issuer of the shares, Fitbit is strictly liable to Plaintiff and the Class for the misstatements and omissions.

77.     None of the Individual Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

78.     By reasons of the conduct herein alleged, each Individual Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

79.     Plaintiff acquired Fitbit securities pursuant and/or traceable to the Registration Statement for the IPO.

80.     Plaintiff and the Class have sustained damages. The value of Fitbit securities has declined substantially subsequent to and due to the Individual Defendants' violations.

**COUNT IV**
**Violation of Section 15 of**
**The Securities Act Against the Individual Defendants**

81.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

82.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

83.     Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Fitbit within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause Fitbit to engage in the acts described herein.

84.     Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

85.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: January 11, 2016

Respectfully submitted,

*/s/Jennifer Pafiti*_____
Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:    (818) 532-6449
Email:        jpafiti@pomlaw.com

Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665
Email:  jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

Patrick V. Dahlstrom
**POMERANTZ LLP**
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603

20

Telephone:    (312) 377-1181
Facsimile:    (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

1.      I,  _____Brian H. Robb, MSc_____, make this

declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities

Litigation Reform Act of 1995.

2. I have reviewed a Complaint against FitBit Inc. ("FitBit" or the "Company"), and authorize the

filing of a comparable complaint on my behalf.

3. I did not purchase or acquire FitBit securities at the direction of plaintiffs counsel or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired FitBit securities during the class period, including providing testimony at deposition and trial, if

necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in FitBit

securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws, except: *Brian H.

Robb v. Education Management Corporation, et al., 2:14-cv-1287* (DSC).

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


Executed _____01-07-2016_____
                   **(Date)**

                                        _____
                                               **(Signature)**

                                          Brian H. Robb, MSc
                                        _____
                                            **(Type or Print Name)**

**FITBIT INC. (FIT)**                                               **Robb, Brian H.**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 11/30/2015 | Purchase | 1,490 | $28.6200 |
| 12/03/2015 | Purchase | 1,460 | $30.0796 |
| 12/04/2015 | Purchase | 1,417 | $31.7695 |
| 12/04/2015 | Purchase | 1,407 | $31.3499 |
| 12/04/2015 | Purchase | 1,389 | $32.0000 |
| 12/07/2015 | Purchase | 1,293 | $34.3300 |
| 12/08/2015 | Purchase | 32 | $33.1100 |
| 12/16/2015 | Purchase | 100 | $29.9642 |
| 12/28/2015 | Purchase | 9 | $29.9220 |
| 12/28/2015 | Purchase | 3 | $30.0699 |
| 12/02/2015 | Sale | 1,490 | $29.5501 |
| 12/04/2015 | Sale | 1,460 | $30.7000 |
| 12/04/2015 | Sale | 1,281 | $31.1020 |
| 12/04/2015 | Sale | 36 | $31.1001 |
| 12/04/2015 | Sale | 1,407 | $31.7000 |
| 12/04/2015 | Sale | 1,389 | $32.2000 |
| 12/04/2015 | Sale | 100 | $31.4300 |