**KESSLER TOPAZ MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001
jjoost@ktmc.com

*Attorneys for the Institutional Investor Group and Proposed Liaison Counsel for the Class*

[Additional counsel on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIAN H. ROBB, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FITBIT, INC., JAMES PARK, and WILLIAM R. ZERELLA,<br><br>Defendants. | Case No. 3:16-cv-00151-SI<br><br>**INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Date:        April 15, 2016<br>Time:       2:30 p.m.<br>Courtroom: 1, 17th Floor<br>Judge:      Hon. Susan Illston<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................... 4

ARGUMENT ........................................................................................................................ 5

      I.    The Standard for Selecting Lead Plaintiff Under the PSLRA ......................... 5

      II.   The Fitbit Investor Group's Aggregation Fails Under *Versata* and Is Improper ............................................................................................................. 5

            A.    The Fitbit Investor Group Has Offered No Evidence Demonstrating that Its Aggregation Is Appropriate Under *Versata* or the PSLRA ....................... 6

            B.    The Fitbit Investor Group's Papers Affirmatively Show that Aggregation Is Inappropriate Under *Versata* and the PSLRA ............................. 7

            C.    Cunningham Is Not an Appropriate Lead Plaintiff Because of His Unique Trading Strategy .................................................................................. 8

      III.  The Fitbit Investor Group's Non-*Dura* Losses Should Be Excluded .............................. 9

      IV.  Applying the Foregoing Arguments, the Institutional Investor Group Has the Largest Loss ............................................................................................... 9

CONCLUSION ................................................................................................................... 10

i

INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
CASE NO. 3:16-CV-00151-SI

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ............................................................................................... 3, 9, 10

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. C 07-0614 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ................................. 3, 8, 9

*Elstein v. Net1 UEPS Techs., Inc.*,
    No. 13 Civ. 9100 (ER), 2014 WL 3687277 (S.D.N.Y. July 23, 2014) ......................................... 6

*Feyko v. Yuhe Int'l Inc.*,
    No. CV 11–05511 DDP, 2012 WL 682882 (C.D. Cal. Mar. 2, 2012) ......................................... 7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ................................................................................................... 1, 5

*In re Connectics Corp. Sec. Litig.*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) ....................................................................................... 3, 9

*In re Versata, Inc. Sec. Litig.*,
    No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ..................................... *passim*

*Khunt v. Alibaba Grp. Holding Ltd.*,
    No. 15 Civ. 00759 (CM), 2015 WL 1954134 (S.D.N.Y. May 1, 2015) ...................................... 6

*Mulligan v. Impax Labs., Inc.*,
    No. C-13-1037 EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013) ........................................... 9

*Perlmutter v. Intuitive Surgical, Inc.*,
    No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ....................................... 7

*Peters v. Jinkosolar Holdings, Co., Ltd.*,
    No. 11 Civ. 7133 (JPO), 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ....................................... 6

*Richardson v. TVIA, Inc.*,
    No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ....................................... 5

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ............................................................................................. 5

Federal Rule of Civil Procedure 23 ............................................................................................ 1, 5

i

INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
CASE NO. 3:16-CV-00151-SI

# **INTRODUCTION**

Lead Plaintiff movants and putative Class members, City of Omaha Police and Fire Retirement System ("Omaha"), Local No. 8 IBEW Retirement Plan & Trust ("IBEW Local No. 8"), and Chester County Employees Retirement Fund ("Chester County") (collectively, the "Institutional Investor Group"), respectfully submit this memorandum of law in opposition to the competing motions for appointment of Lead Plaintiff and Lead Counsel filed by: George Diaz ("Diaz") (*See* ECF No. 11); Timothy Flynn, Jesse M. Koth and Kelley Koth, Viet Tran, and Mark Cunningham (collectively, the "Fitbit Investor Group") (*See* ECF No. 14); Bright Agyapong ("Agyapong") (*See* ECF No. 18); and the Teamsters Local 282 Trust Funds ("Teamsters 282") (*See* ECF No. 22).

Presently, there are five competing motions for appointment of Lead Plaintiff in the securities class action against Fitbit Inc., James Park, and William R. Zerrella before this Court. These motions are governed by the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, *et seq.*, which direct that the movant with the largest financial interest in the case shall be deemed the "presump[tive]" lead plaintiff and shall be appointed, as long as it is otherwise typical and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure. *In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *2 (N.D. Cal. Aug. 20, 2001). Here, a review of the competing lead plaintiff motions demonstrates that the Institutional Investor Group, which is comprised of three public pension funds who have provided declarations about their commitment and plan to actively oversee this litigation, is the very sort of lead plaintiff that the PSLRA encourages to participate in private securities class actions. The Institutional Investor Group not only asserts the largest financial loss, it is otherwise typical and adequate. As such, the Institutional Investor Group should be appointed Lead Plaintiff under the analysis required by the PSLRA. *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).

The Institutional Investor Group has a loss of approximately $2.03 million. Only one movant, the Fitbit Investor Group, claims a higher loss, asserting approximately $3.17 million in losses. However, a review of the Fitbit Investor Group's papers reveals that its loss figures are infirm for a number of reasons and should be set aside. Specifically, the Fitbit Investor Group's

1

INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
CASE NO. 3:16-CV-00151-SI

aggregation of its losses is improper because it has failed to meet the criteria for appointing a group, as set forth under this Court's decision in *Versata*. Despite the evidence required by *Versata*, the Fitbit Investor Group provided **no evidence** to "demonstrate[]" that it can adequately represent the Class consistent with the PSLRA. *Versata*, 2001 WL 34012374, at *5-7 (discussing evidence to be considered in evaluating whether aggregation is appropriate). Specifically, unlike the Institutional Investor Group, the Fitbit Investor Group has submitted **no evidence** concerning the respective backgrounds of its five individual members, **no evidence** that its members had any communications prior to moving for lead plaintiff, and **no explanation** as to how its members can cohesively manage the litigation. For this reason, there is no basis to conclude that appointment of the Fitbit Investor Group would be consistent with the PSLRA. *See id.* Thus, the Fitbit Investor Group and its losses cannot be considered collectively.

In addition to being entirely unsupported by the record, the Fitbit Investor Group's attempt at aggregation fails because its papers affirmatively show that two of its members, Viet Tran ("Tran") and Mark Cunningham ("Cunningham"), cannot serve as part of the Fitbit Investor Group. Tran's certification reflects that he is not represented by the Fitbit Investor Group's proposed co-lead counsel in this case, Glancy Prongay & Murray LLP ("Glancy") and Pomerantz LLP ("Pomerantz"), but, instead, by a third law firm that appears nowhere else in the Fitbit Investor Group's papers, the Rosen Law Firm, P.A. ("Rosen"). *See* ECF No. 15-2 at 8. In light of his separate representation, Tran's inclusion would add a separate, potentially disparate, voice to the leadership of this action and raises serious questions as to which law firms, the two firms proposed as co-lead counsel by the Fitbit Investor Group or Tran's separate counsel, are making decisions on behalf of the putative Class.

Cunningham is also not an appropriate member of the Fitbit Investor Group because, as shown by his certification, he is an "in and out" trader who is potentially subject to a unique defense as to whether he relied on the public price of Fitbit stock when making his trades. Between September 15, 2015 and January 6, 2016, Cunningham purchased Fitbit stock 114 times and sold Fitbit stock 68 times, with purchases and sales of large chunks of stock often occurring on the same

day in wash transactions. *See* ECF No. 15-2 at 12-16. In sum, Cunningham bought $5,766,909 worth of Fitbit stock and then sold $5,218,247, with all but one sale occurring prior to the first disclosure of the truth alleged in this case. *See* ECF No 15-3 at 2-5. The "loss" Cunningham asserts in this case is associated with the residual shares accumulated by Cunningham in pursuit of whatever trading strategy he was employing. These types of highly atypical traders are not appropriately appointed lead plaintiff. *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-0614 MHP, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008).

Finally, approximately $750,000 of the Fitbit Investor Group's losses should not be counted in connection with assessment of "financial interest" because they are associated with the sale of stock prior to the alleged disclosure of the truth on January 6, 2016. As this Court has recognized, "[a] shareholder who sells stocks before a disclosure of truthful information will not have suffered any loss based on a misrepresentation related to that information." *In re Connectics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1003 (N.D. Cal. 2008) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005)). For this reason, courts regularly discount such losses when calculating financial interest, which is the appropriate course here.

Accordingly, the Institutional Investor Group has the largest loss of any movant, as reflected in the chart below:

| Movant Losses with *Dura* Adjustments[1] ||
| --- | --- |
| **Movant** | **Losses** |
| Institutional Investor Group | $2,034,261 |
| Teamsters 282 | $961,185[2] |
| Jesse M. Koth and Kelley Koth | $791,119 |
| Timothy Flynn | $693,135 |
| Mark Cunningham | $548,663 |
| Viet Tran | $392,172 |
| George Diaz | $236,558 |
| Bright Agyapong | $144,851 |

---

[1] Given the small size of their losses, we did not perform a *Dura* analysis for movants Agyapong and Diaz. In addition, Teamsters 282 did not have any sales during the relevant period. *See* Declaration of Thomas L. Laughlin ("Laughlin Decl."), Ex. A.

[2] Teamsters 282's loss chart includes a purchase on January 5, 2016 of 5,260 shares at $29.95, a purchase that is not reflected in its original or amended certification. *Compare* ECF No. 32-1 *with* ECF No. 23-3. The $961,185 loss set forth in this chart reflects Teamsters 282 loss without this additional purchase, rather than the loss of $1,036,145 claimed in Teamsters 282's loss chart.

INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
CASE NO. 3:16-CV-00151-SI

For the foregoing reasons, and the reasons stated in the Institutional Investor Group's lead plaintiff motion, the motions by the competing lead plaintiffs should be denied.

## **BACKGROUND**

This securities class action, which commenced on January 11, 2016, alleges claims on behalf of persons who purchased Fitbit securities: (1) pursuant and/or traceable to Fitbit's false and misleading Registration Statement and Prospectus issued in connection with the Company's initial public offering on or about June 18, 2015 (the "IPO" or the "Offering"); and/or (2) on the open market between June 18, 2015 and January 6, 2016. The action asserts claims under both the Securities Act of 1933 (the "Securities Act"), with respect to the misleading Registration Statement and Prospectus, and under the Securities Exchange Act of 1934 (the "Exchange Act"), with respect to Defendants' other misstatements. ¶2.[3]

Fitbit manufactures and provides wearable fitness-tracking devices worldwide. The Company's main products are wrist bands and clippable devices that purport to monitor a user's fitness activity by tracking his/her health and fitness activities. Among the Company's products are Fitbit Charge HR ("Charge HR"), a wireless heart rate and activity wristband, and Fitbit Surge ("Surge"), a fitness watch that consists of a GPS watch, heart rate tracker, activity tracker, and smartwatch. On or about June 18, 2015, Fitbit completed its IPO, issuing 36,575,000 shares and raising net proceeds of approximately $732 million. ¶5.

The Complaint alleges that Fitbit and the individually-named Defendants made false and/or misleading statements and/or failed to disclose that: (1) Fitbit's heart rate monitoring technology was inaccurate and did not consistently deliver accurate heart rate readings during exercise; (2) the inaccuracy of Fitbit's heart rate monitoring technology posed serious health risks to users of Fitbit's products; and (3) as a result of the foregoing, Fitbit's public statements were materially false and misleading at all relevant times. ¶6.

The Complaint further alleges that true facts underlying these statements began to be revealed on January 6, 2016, when a class action lawsuit was filed against Fitbit in the United States

---

[3]   Unless otherwise noted, all references to "¶" and "¶¶" are to the Class Action Complaint, filed on January 11, 2016, ECF No. 1.

4

District Court for the Northern District of California, alleging that the heart rate monitoring systems on the Company's Charge HR and Surge devices were dangerously inaccurate and posed serious health risks to users. On this news, Fitbit's stock fell $1.40 per share, or 5.8%, to close at $22.90 per share on January 6, 2016. ¶¶39-42.

## ARGUMENT

### I. The Standard for Selecting Lead Plaintiff Under the PSLRA

The lead plaintiff appointment process under the PSLRA was enacted to preserve the important enforcement function of private securities class actions, while simultaneously bringing to an end "lawyer-initiated and -driven litigation." *Versata*, 2001 WL 34012374, at *2. To accomplish this goal, the PSLRA created a rebuttable presumption that the movant with the "largest financial interest in the relief sought by the class" should be appointed lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); *see also Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *2 (N.D. Cal. Apr. 16, 2007) (discussing the PSLRA's lead plaintiff appointment process); and *Versata*, 2001 WL 34012374, at *2. The lead plaintiff presumption can be rebutted by competing movants if they come forward with "evidence" that the presumptive plaintiff is not adequate and typical within the meaning of Fed. R. Civ. P. 23. *Id.*; and *see also Cavanaugh*, 306 F.3d at 729 ("The Reform Act provides a simple three-step process for identifying the lead plaintiff.").

Applying this law, the Institutional Investor Group is the presumptively most adequate Plaintiff and should be appointed as Lead Plaintiff for the Class.

### II. The Fitbit Investor Group's Aggregation Fails Under *Versata* and Is Improper

The Fitbit Investor Group claims a loss of $3.17 million, facially larger than the $2.03 million loss claimed by the Institutional Investor Group. *See* ECF No. 14 at 6. However, the Fitbit Investor Group cannot be aggregated because it fails to meet the criteria set forth by this Court in *Versata*. *See Versata*, 2001 WL 34012374, at *2. In fact, the Fitbit Investor Group is an agglomeration of five, unrelated, individual investors with two proposed co-lead counsel, a third undisclosed counsel, and absolutely no evidence that it can cohesively, effectively, and actively lead

this litigation. Accordingly, the losses of the individual members of the Fitbit Investor Group should not be aggregated for purposes of the PSLRA.

### A. The Fitbit Investor Group Has Offered No Evidence Demonstrating that Its Aggregation Is Appropriate Under *Versata* or the PSLRA

In *Versata*, the Court addressed the appropriateness of aggregation under the PSLRA, holding that it would evaluate such proposed groups on a "'case-by-case inquiry,'" guided by "'a rule of reason'" with a focus on whether "the proposed group 'will actively represent the class.'" *Id* at *5. While the Court observed that there was "no set criteria to assess," it observed that courts following "a rule of reason" approach have "required specific information from proposed lead plaintiffs," including: (i) "descriptions of [the group's] members, including any pre-existing relationship among them;" (ii) "an explanation of how its members would function collectively;" and (iii) "a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation." *Id*.; and *see also id.* at *6-7 (running through extensive evidence submitted by proposed members of a group and allowing aggregation, based on an evaluation of the evidence).[4]

Thus, movant groups seeking appointment as lead plaintiff have specific guidance from this Court, as to the evidence required by this Court before a group's motion will be considered. Despite this guidance from the Court, the Fitbit Investor Group seeks to aggregate the losses of its five

---

[4] Consistent with this Court's reasoning in *Versata*, other courts following "a rule of reason" approach to aggregation have similarly emphasized the need for members of such a group to support their motion with evidence concerning their coherence and ability to manage the litigation. *See, e.g.*, *Peters v. Jinkosolar Holdings, Co., Ltd.*, No. 11 Civ. 7133 (JPO), 2012 WL 946875, at *6 (S.D.N.Y. Mar. 19, 2012) ("Courts have expressed particular concern when potential lead plaintiff groups appear to have been 'cobbled together' for the sake of the litigation."); *Elstein v. Net1 UEPS Techs., Inc.*, No. 13 Civ. 9100 (ER), 2014 WL 3687277, at *3 (S.D.N.Y. July 23, 2014) ("this court has required that unrelated plaintiffs first demonstrate that appointment as a group would best serve the class"). To carry their burden, investors seeking to aggregate their losses must come forward with evidence showing that the "group will be able to function cohesively" and "effectively manage the litigation apart from their lawyers." *Khunt v. Alibaba Grp. Holding Ltd.*, No. 15 Civ. 00759 (CM), 2015 WL 1954134, at *7 (S.D.N.Y. May 1, 2015) (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)). Factors courts have looked to in evaluating this issue include: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Id.*

constituent members, but it has entirely failed to comply with the *Versata* criteria. *See Versata*, 2001 WL 34012374, at *5. Considering the evidence of their ability to direct this litigation, the Fitbit Investor Group falls short in every respect. The Fitbit Investor Group has submitted no evidence concerning the backgrounds of its members or their relationship with one another, if any. *See* ECF No. 14. Similarly, the Fitbit Investor Group has provided no evidence that it has a plan to function cohesively or that its members will communicate effectively with one another. *See id.* There is no description of the facts surrounding the formation of the Fitbit Investor Group and no explanation of how the Fitbit Investor Group's three sets of lawyers plan to coordinate with one another. *Id.* While the members of the Fitbit Investor Group have submitted certifications, these certifications contemplate each member individually serving as a "representative party" and make no mention of working together as a group. The complete absence of such evidence strongly suggests that the Fitbit Investor Group is nothing more than a lawyer-driven group of individual investors that lacks the resources and sophistication to effectively prosecute this action.[5]

### B. The Fitbit Investor Group's Papers Affirmatively Show that Aggregation Is Inappropriate Under *Versata* and the PSLRA

The Fitbit Investor Group's own lead plaintiff papers show why aggregation is not appropriate here. Most notably, the Fitbit Investor Group includes Tran, who is an individual represented by entirely different counsel than that proposed as co-lead counsel. Tran's certification reflects that his counsel is Rosen, not proposed co-lead counsel Glancy or Pomerantz. *Compare*

---

[5] The shortcomings of the Fitbit Investor Group's evidence stand in stark contrast to the evidence submitted by the Institutional Investor Group in support of its motion. The Institutional Investor Group submitted a joint declaration that provided background on each of its members, including each members' experience with securities litigation and financial sophistication. *See* ECF No. 27-6 at 3-5, ¶¶1-8. The Institutional Investor Group also submitted evidence concerning its members' decision to work together and its members' pre-motion discussions with one another regarding coordination and procedures for future communication. *See id.* at 5-7, ¶¶9-15. Further, unlike the Fitbit Investor Group, the Institutional Investor Group seeks to appoint a single firm as lead counsel, providing for a more consolidated legal leadership of the case. *See id.* at 7, ¶16. The Institutional Investor Group's coherence is further supported by the fact that all of its members are institutions, the preferred type of lead plaintiff under the PSLRA. *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *13 (N.D. Cal. Feb. 15, 2011) (appointing "an institutional investor . . . comports with the PSLRA's goal to increase the likelihood that institutional investors would serve as lead plaintiffs"); *Feyko v. Yuhe Int'l Inc.*, No. CV 11–05511 DDP (PJWx), 2012 WL 682882, at *3 (C.D. Cal. Mar. 2, 2012).

7

INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
CASE NO. 3:16-CV-00151-SI

ECF No. 14 at 10 *with* ECF No. 15-2 at 8.  Rosen is not mentioned in either the Fitbit Investor Group's lead plaintiff motion or the proposed lead plaintiff order it submitted.  *See* ECF Nos. 14, 14-1.  Nothing is distinguished about what Rosen's role would be, should the Fitbit Investor Group be appointed.  The presence of a third law firm, with an undisclosed role, is direct evidence that the Fitbit Investor Group cannot direct this case without "undue influence" by counsel and that the Fitbit Investor Group was created by, and for the benefit of, its attorneys, not the putative Class.  *See Versata*, 2001 WL 34012374, *6.

### C. Cunningham Is Not an Appropriate Lead Plaintiff Because of His Unique Trading Strategy

Cunningham is also not an appropriate member of the Fitbit Investor Group because, as shown by his certification, he was an "in and out" trader who is potentially subject to a unique defense pertaining to whether he relied on the public price of Fitbit stock when making his trades.  Between September 15, 2015 and January 6, 2016, Cunningham purchased Fitbit stock 108 times and sold Fitbit stock 68 times, with purchases and sales of large chunks of stock often occurring on the same day in wash transactions.  *See* ECF No. 15-2 at 12-16.  For example, on November 9, 2015, Cunningham purchased two lots of 500 shares of Fitbit stock and two lots of 250 shares.  *See id.* at 12.  On the same day, he sold 100 shares of Fitbit twice, 103 shares once, and 197 shares once.  *See id.* at 15.  Over the course of the next few days in November, Cunningham purchased and sold tens of thousands of shares of Fitibit in dozens of trades.  *See id.*  In sum, Cunningham purchased $5,766,909 worth of Fitbit stock and then sold $5,218,247 worth of Fitbit stock, with all but one sale occurring prior to the first disclosure of the truth alleged in this case.  *See* ECF No. 15-3 at 2-5.  As such, the "loss" Cunningham asserts in this case is simply associated with the residual shares he accumulated in pursuit of whatever trading strategy he was employing.

Courts have routinely held that highly atypical traders, such as Cunningham, are not appropriately appointed lead plaintiff.  *See, e.g.*, *Eichenholtz*, 2008 WL 3925289, at *11 ("This day-trader would not be typical of the class because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility.  Specifically, it may be subject to a

8

unique defense regarding its reliance upon publicly available information.") (citing *In re Silicon Storage Tech. Sec. Litig.*, No. C 05–0295 PJH, 2005 U.S. Dist. Lexis 45246, at *25 (N.D. Cal. May 3, 2005); *In re Bally Total Fitness Sec. Litig.*, No. 04C3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005)).

### III. The Fitbit Investor Group's Non-*Dura* Losses Should Be Excluded

Approximately $750,000 of the Fitbit Investor Group's losses should not be counted in connection with assessment of "financial interest" because they are associated with the sale of stock prior to the alleged disclosure of the truth on January 6, 2016. ¶¶39-42. Specifically, $326,396 of the losses claimed by Tran and $424,538 of the losses claimed by Flynn relate to Fitbit shares sold by these two investors prior to the disclosure of the truth on January 6, 2016. *See* ECF No. 15-2 at 2-3, 7-9; and ECF No. 15-3. These losses are not recoverable because they were not caused by Defendants' fraud. *See Connectics*, 542 F. Supp. 2d at 1003. Accordingly, courts regularly exclude such losses when calculating movants' respective losses and such an approach is warranted here. *See Eichenholtz*, 2008 WL 3925289, at *3 ("'[I]t is clear that under *Dura* and its progeny, any losses that [a plaintiff] may have incurred before [defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation.'") (citing *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007)); *Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC, 2013 WL 3354420, at *5 (N.D. Cal. July 2, 2013) ("Where a plaintiff sustained losses during a class period, but these losses stem from stocks sold before the alleged fraud was revealed, these losses would generally not be traceable to the fraud, but instead to ordinary market forces.").

### IV. Applying the Foregoing Arguments, the Institutional Investor Group Has the Largest Loss

As the discussion above shows, the Institutional Investor Group has the largest financial interest in this case. The losses of the movants, with the losses of the Fitbit Investor Group disaggregated and adjusted for *Dura*, are set forth below:

9

INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
CASE NO. 3:16-CV-00151-SI

| Movant Losses with *Dura* Adjustments | |
|---|---|
| **Movant** | **Losses** |
| Institutional Investor Group | $2,034,261 |
| Teamsters 282 | $961,185 |
| Jesse M. Koth and Kelley Koth | $791,119 |
| Timothy Flynn | $693,135 |
| Mark Cunningham | $548,663 |
| Viet Tran | $392,172 |
| George Diaz | $236,558 |
| Bright Agyapong | $144,851 |

With a loss of $2.03 million, the Institutional Investor Group has a loss that is more than twice the size of the next nearest movant, Teamsters 282. The Institutional Investor Group's loss of $2.03 million is also larger than the $1,484,254 in combined losses of the Fitbit Investor Group, when Cunningham and Tran are excluded due to their individual inadequacies. *See* Laughlin Decl., Ex. A.

## CONCLUSION

For the foregoing reasons, the Institutional Investor Group respectfully requests that the Court deny the competing motions for appointment of Lead Plaintiff, appoint Institutional Investor Group as Lead Plaintiff in this action, and approve its selection of the law firms of Scott+Scott, Attorneys at Law, LLP, to serve as Lead Counsel, and Kessler Topaz Meltzer & Check, LLP, to serve as Liaison Counsel.

Dated: March 25, 2016          Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*s/ Jennifer L. Joost*
JENNIFER L. JOOST (Bar No. 296164)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001
jjoost@ktmc.com

*Attorneys for the Institutional Investor Group and Proposed Liaison Counsel for the Class*

**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
THOMAS L. LAUGHLIN (admitted *pro hac vice*)

10

INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
CASE NO. 3:16-CV-00151-SI

1
2
3
4
5

The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Tel:  (212) 223-6444
Fax:  (212) 223-6334
tlaughlin@scott-scott.com

*Attorneys for the Institutional Investor Group and Proposed Lead Counsel for the Class*

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
CASE NO. 3:16-CV-00151-SI

# CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on March 25, 2016.

           **KESSLER TOPAZ MELTZER & CHECK, LLP**

           *s/ Jennifer L. Joost*
           JENNIFER L. JOOST
           One Sansome Street, Suite 1850
           San Francisco, CA 94104
           Tel:  (415) 400-3000
           Fax:  (415) 400-3001
           jjoost@ktmc.com

INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
CASE NO. 3:16-CV-00151-SI

**MAIL NOTICE LIST**

Patrick V. Dahlstrom
POMERANTZ LLP
10 South LaSalle Street, Suite 3505
Chicago, IL 60603

Marc Gorrie
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, NY 10016

---

13

INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING
MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
CASE NO. 3:16-CV-00151-SI

## Mailing Information for a Case 3:16-cv-00151-SI Robb v. Fitbit Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Thomas Elrod**
  telrod@kmllp.com

- **Robert J. Gralewski , Jr**
  bgralewski@kmllp.com,rli@kmllp.com,fbrizuela@kmllp.com,ipress@kmllp.com

- **J Alexander Hood**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Willem F. Jonckheer**
  wjonckheer@schubertlawfirm.com,kmessinger@schubertlawfirm.com,epawson@schubertlawfirm.com,paralegal@schubertlawfirm.com

- **Jennifer Lauren Joost**
  jjoost@ktmc.com,rdegnan@ktmc.com,namjed@ktmc.com,hjohnson@ktmc.com

- **Thomas L Laughlin , IV**
  tlaughlin@scott-scott.com,efile@scott-scott.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Ira M. Press**
  ipress@kmllp.com,plinden@kmllp.com,lmorris@kmllp.com,slopez@kmllp.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Barbara Ann Rohr**
  brohr@faruqilaw.com,smarton@faruqilaw.com,bheikali@faruqilaw.com,ecf@faruqilaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Patrick            V. Dahlstrom
Pomerantz LLP
10 South LaSalle Street, Suite 3505
Chicago, IL 60603

Marc               Gorrie
Pomerantz, LLP
600 Third Avenue, 20th Floor
New York, NY 10016
```