Robert J. Gralewski, Jr. (196410)
KIRBY McINERNEY LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 398-4340
rgralewski@kmllp.com
*and*
Ira M. Press (admitted *pro hac vice*)
Thomas W. Elrod (admitted *pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540
ipress@kmllp.com
telrod@kmllp.com

*Counsel for Proposed Lead Plaintiff
Teamsters Local 282 Trust Funds*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN H. ROBB, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FITBIT INC., JAMES PARK, and WILLIAM R. ZERELLA,<br><br>Defendants. | Case No: 16-cv-00151 (SI)<br><br>Hon. Susan Illston<br><br>MEMORANDUM OF LAW OF MOVANT TEAMSTERS LOCAL 282 IN OPPOSITION TO COMPETING MOVANTS' MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL<br><br>Hearing Date: April 15, 2016<br>Time: 9:00 a.m.<br>Courtroom: 1, 17th Floor |

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     ARGUMENT ..............................................................................................2

        A.      Standard for Appointing Lead Plaintiff ................................................2

        B.      The FitBit Investor Group and Institutional Investor Group are Improper
                Groups and are Inadequate Lead Plaintiffs ...........................................4

                1.      The FitBit Investor Group is a Lawyer Manufactured Group ...................5

                        a.      The FitBit Investor Group Provides No Evidence of
                                Pre-Litigation Efforts or Coordination .............................5

                        b.      Individual FitBit Investor Group Members Cannot
                                Belatedly Disband Into Separate Group Movants at this Point .......7

                2.      The Institutional Investor Group Motion Should Be Denied ....................9

                        a.      The Institutional Investor Group is Not a Proper
                                Lead Plaintiff Group...............................................9

                        b.      The Institutional Investor Group Members Collectively
                                Run Afoul of the PSLRA's Prohibition on "Professional"
                                Plaintiffs .......................................................12

        C.      The Competing Motions of Bright Agyapong and George Diaz Should
                Be Denied ..........................................................................14

        D.      Local 282 Satisfies the Requirements of Rule 23 and is not Subject
                to any Unique Defenses .............................................................14

III.    CONCLUSION ..............................................................................15

i

# TABLE OF AUTHORITIES

**Cases**

*Arciaga v. Barrett Bus. Servs., Inc.*,
    No. 14 Civ. 5884, 2015 WL 791768 (W.D. Wash. Feb. 25, 2015)....................................7

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999)............................................................................12

*In re Bally Total Fitness Sec. Litig.*,
    No. 04 Civ. 3530, 2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005)....................6

*Beckman v. Ener1, Inc.*,
    No. 11 Civ. 5794, 2012 WL 512651 (S.D.N.Y. Feb. 15, 2012)......................................7

*Buettgen v. Harless*,
    263 F.R.D. 378 (N.D. Tex. 2009)....................................................................................8

*In re Carreker Corp. Sec. Litig.*,
    No. 03 Civ. 0250, 2003 U.S. Dist. LEXIS 25988 ( N.D. Tex. Aug. 14, 2003).................7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ...............................................................................4, 12, 14

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .......................................................................................4, 11

*In re CMED Sec. Litig.*,
    No. 11 Civ. 9297, 2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012) ...................................10

*Chiaretti v. Orthodontic Ctrs. Of Am., Inc.*,
    No. 03 Civ. 1027, 2003 U.S. Dist. LEXIS 25264 (E.D. La. Aug. 28, 2003) ...................13

*In re Conseco, Inc. Sec. Litig.*,
    120 F. Supp. 2d 729 (S.D. Ind. 2000)..............................................................................6

*In re Cree, Inc. Sec. Litig.*,
    219 F.R.D. 369 (M.D.N.C. 2003)..................................................................................15

*Cunha v. Hansen Nat. Corp.*,
    No. 08 Civ. 01249, 2009 WL 2029797 (C.D. Cal. July 13, 2009)..................................12

*In re Doral Fin. Corp. Sec. Litig.*,
    414 F. Supp. 2d 398 (S.D.N.Y. 2006) ..............................................................................8

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. 07 Civ. 06140 (MHP), 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)..............4, 5, 11

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002) .............................................................................4, 15

*In re eSpeed, Inc.*,
    232 F.R.D. 95 (S.D.N.Y. 2005)......................................................................................4

*Friedman v. Rayovac Corp.*,
219 F.R.D. 603 (W.D. Wis. 2002).....................................................................7

*In re Gemstar-TV Guide Intern., Inc. Sec. Litig.*,
209 F.R.D. 447(C.D. Cal. 2002).................................................................7, 11

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012)......................................................4, 8, 11, 15

*Hodges v. Akeena Solar, Inc.*,
263 F.R.D. 528 (N.D. Cal. 2009) ....................................................................3

*Juliar v. Sunopta Inc.*,
No. 08 Civ. 0933, 2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ......................8

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ..............................................................4

*Malasky v. IAC/Interactivecorp*,
No. 04 Civ. 7447, 2004 WL 2980085 (S.D.N.Y. Dec. 21, 2004) ......................4

*Marcus v. J.C. Penney*,
No. 13 Civ. 00736, ECF No. 62 (E.D. Tex. Feb. 28, 2014) ..............................8

*In re Muni. Mortg. & Equity, LLC, Sec. & Derivative Litig.*,
No. 08 MD 1961, ECF No. 75 (D. Md. Nov. 17, 2008)......................................6

*In re Network Assocs.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..............................................................4

*Nicolow v. Hewlett Packard Co.*,
No. 12 Civ. 5980 (CRB), 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ..............7

*Niederklein v. PCS Edventures!.com, Inc.*,
No. 10 Civ. 00479, 2011 WL 759553 (D. Idaho Feb. 24, 2011)........................8

*In re Peregrine Sys., Inc. Sec. Litig.*,
No. 02 Civ. 870, 2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ......................4

*In re Pfizer Inc. Sec. Litig.*,
233 F.R.D. 334 (S.D.N.Y. 2005)........................................................................8

*Phuong Ho v. NQ Mobile, Inc.*,
No. 13 Civ. 8125, 2014 WL 1389636 (S.D.N.Y. Apr. 9, 2014) ......................10

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011)......................................................................10

*Police & Fire Ret. Sys. v. SafeNet Inc.*,
No. 06 Civ. 5797, 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007).....8

*Randall v. Fifth St. Fin. Corp.*,
No. 15 Civ. 7759, 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016)............................8

*In re Razorfish, Inc. Sec. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y. 2001) ..........................................................4, 7

iii

*In re Reliant Sec. Litig.,*
   No. 02 Civ. 1810, 2002 U.S. Dist. LEXIS 27777 (S.D. Tex. Aug. 27, 2002) ...................7

*Schriver v. IMPAC Morg. Holdings, Inc.,*
   No. 06 Civ. 31, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) ....................7, 11

*Smith v. Suprema Specialties, Inc.,*
   206 F. Supp. 2d 627 (D.N.J. 2002) ...................................................................12

*Takeda v. Turbodyne Tech., Inc.,*
   67 F. Supp. 2d 1129, 1135 (C.D. Cal. 1999) ................................................. 3-4

*In re Telxon Corp. Sec. Litig.,*
   67 F. Supp. 2d 803 (N.D. Ohio 1999) ...........................................................7, 13

*Thompson v. Shaw Grp., Inc.,*
   No. 04 Civ. 1685, 2004 WL 2988503 (E.D. La. Dec. 14, 2004)................................ 12-13

*Tsirekidze v. Syntax-Brillian Corp.,*
   No. 07 Civ. 2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ............................6, 8, 11, 14

*In re Versata, Inc. Sec. Litig.,*
   No. 01 Civ. 1439 (SI), 2001 WL 34012374 (N.D. Cal. Aug. 20, 2011) ....................5, 10

*In re Vicuron Pharms., Inc. Sec. Litig.,*
   225 F.R.D. 508 (E.D. Pa. 2004) ...................................................................12

*Welgus v. Trinet Grp., Inc.,*
   No. 15 Civ. 03625 (BLF), 2015 WL 7770222 (N.D. Cal. Dec. 3, 2015)............................2

*Zucker v. Zoran Corp.,*
   No. 06 Civ. 04843 (WHA), 2006 WL 3591156 (N.D. Cal. Dec. 11, 2006).....................15

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B).........................................................................1, 2, 3, 4, 12

16-CV-00151 MEMORANDUM OF LAW OF MOVANT TEAMSTERS LOCAL 282 IN
OPPOSITION TO COMPETING MOVANTS' MOTIONS FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF LEAD COUNSEL

## I.  PRELIMINARY STATEMENT

Lead Plaintiff Movant Teamsters Local 282 Trust Funds ("Local 282") respectfully submits this memorandum of law in opposition to competing movants' motions for appointment as lead plaintiff and approval of lead counsel.[1]

There are five competing motions currently pending before the Court seeking appointment of lead plaintiff and lead counsel for the putative plaintiff class in the above-captioned action. Those motions were filed by:  (i) George Diaz (ECF No. 11); (ii) Timothy Flynn, Jesse M. Koth and Kelley Koth, Viet Tran and Mark Cunningham (moving jointly as, the "Fitbit Investor Group") (ECF No. 14); (iii) Bright Agyapong (ECF No. 18); (iv) Local 282 (ECF No. 22); and (v) the City of Omaha Police and Fire Retirement System, Local No. 8 IBEW Retirement Plan & Trust and Chester County Employees Retirement Fund (moving jointly as, the "Institutional Investor Group") (ECF No. 26).

Where multiple members of the proposed class seek to be appointed lead plaintiff, the PSLRA establishes a rebuttable presumption in favor of appointing the movant who possesses the largest financial interest in the litigation and who otherwise satisfies the requirements of Rule 23 ("Rule 23") of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

While the FitBit Investor and Institutional Investor movant groups claim to have larger financial interests in the claims than Local 282 if the aggregate losses of all of their group members are considered, Local 282 indisputably has the largest loss of any single institutional movant.  Each

---

[1] Unless otherwise defined, all capitalized terms shall have the meaning ascribed in Local 282's opening papers.  *See* ECF No. 22.  "Press Decl." refers to the Declaration of Ira M. Press in Support of Memorandum of Law of Movant Teamsters Local 282 in Opposition to Competing Movants' Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel, which is filed contemporaneously herewith.

of these movant groups is simply an aggregation of completely unrelated investors cobbled together by their counsel (in the case of FitBit Investor Group, by 3 separate law firms) for sole purpose of aggregating losses in order to gain appointment as lead plaintiff (and to get their counsel appointed as lead counsel). Local 282, by way of contrast, avoids the pitfalls of the other movants and consequently retains the largest financial interest of any individual institutional movant in the litigation. Accordingly, the Court should deny other movants' motions for appointment of lead plaintiff and lead counsel and appoint Local 282 Lead Plaintiff and its selected counsel, Kirby McInerney LLP, as Lead Counsel.

## II. ARGUMENT

### A. Standard for Appointing Lead Plaintiff

The PSLRA establishes a rebuttable presumption that the most "adequate plaintiff" is the person or group of persons that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also Welgus v. Trinet Grp., Inc.*, No. 15 Civ. 03625 (BLF), 2015 WL 7770222, at * 2 (N.D. Cal. Dec. 3, 2015). Here, the movants claimed to have the following losses from Class Period FitBit Investments:[2]

_____

[2] *See* FitBit Investor Group Loss Chart [ECF No. 15-3]; Local 282 Loss Chart [ECF No. 23-3]; Institutional Investor Group Loss Chart [ECF No. 27-5]; George Diaz Loss Chart [ECF No. 12-3]; Bright Agyapong Loss Chart [ECF No. 19 at 11].

2

| Movant | Claimed Losses |
|---|---|
| **FitBit Investor Group** | |
| Timothy Flynn | $1,117,674 |
| Jesse M. Koth III and Kelly Koth | $791,120 |
| Viet Tran | $718,568 |
| Mark Cunningham | $548,661 |
| | |
| **Local 282** | $1,036,145 |
| | |
| **Institutional Investor Group** | |
| Local No. 8 IBEW Retirement Plan & Trust | $922,784.46 |
| City of Omaha Police and Fire Retirement System | $867,154.76 |
| Chester County Employees Retirement Fund | $252,957.67 |
| | |
| **George Diaz** | $202,341.66 |
| | |
| **Bright Agyapong** | $144,851.03 |

Here, each of the competing movant groups is the sort of lawyer-driven amalgamation of unrelated investors that courts routinely reject. By way of contrast, Local 282 meets all of the PSLRA's prerequisites for appointment. Local 282 has the largest financial interest of any movant in the relief sought in the Action that also satisfies the typicality and adequacy requirements of Rule 23. Thus, Local 282 is presumptively the "most adequate plaintiff" and should be appointed as Lead Plaintiff in the Action. 15 U.S.C. §78u-4(a)(3)(B)(iii). Local 282 also is an institutional investor, which the PSLRA prefers. *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532-33 (N.D. Cal. 2009) ("Indeed, allowing discrete individual investors to be aggregated to overcome the largest financial stake requirement would vitiate the PSLRA's 'preference that sophisticated institutional investors direct the course of securities cases.'") (citing *Takeda v. Turbodyne Tech.*,

*Inc.*, 67 F. Supp. 2d 1129, 1135 (C.D. Cal. 1999); *In re Network Assocs.*, 76 F. Supp. 2d 1017, 1023 (N.D. Cal. 1999).[3]

**B.**  **The FitBit Investor Group and Institutional Investor Group are Improper Groups and are Inadequate Lead Plaintiffs**

While the PSLRA expressly permits a "person or group of persons" to be appointed lead plaintiff, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), "[t]he PSLRA does not define what a 'group' can or should be.  In *Cavanaugh*, the Ninth Circuit expressly left it to the district courts to decide whether a 'group of persons' can aggregate their losses for purposes of becoming lead plaintiff." *Eichenholtz v. Verifone Holdings, Inc.*, No. 07 Civ. 06140 (MHP), 2008 WL 3925289, at *7 (N.D. Cal. Aug. 22, 2008) (citing and quoting *In re Cavanaugh*, 306 F.3d 726, 731 n.8 (9th Cir. 2002) ("we are not asked to determine whether a group can satisfy the 'largest financial interest' requirement by aggregating losses")).

As court in this district have observed, "the primary purpose of the PSLRA [was] to eliminate lawyer-driven litigation." *Eichenholtz*, 2008 WL 3925289, at *8 (citing *In re Network Assocs.*, 76 F.Supp.2d at 1023) ("Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff."); *see also Cendant*, 264 F.3d at 266-67. Accordingly, many courts have held that the PSLRA's reference to groups means investors with some pre-litigation relationship.  *See In re Peregrine Sys., Inc. Sec. Litig.*, No. 02 Civ. 870, 2002 WL 32769239, at *13 (S.D. Cal. Oct. 11, 2002) ("nothing in the PSLRA authorizes institutional plaintiffs to consolidate their losses for the sole purpose of leapfrogging other movants"); *see also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308-09 (S.D.N.Y. 2001); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 442 (S. Tex. 2002).

---

[3]  *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 243-44 (3d Cir. 2001) ("The plaintiff with the largest stake in a given securities class action will almost invariably be a large institutional investor, and the PSLRA's legislative history expressly states that Congress anticipated and intended that such investors would serve as lead plaintiffs"); *In re Gentiva Sec. Litig.,* 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see In re eSpeed, Inc.,* 232 F.R.D. 95, 99-100 (S.D.N.Y. 2005); *Malasky v. IAC/Interactivecorp,* No. 04 Civ. 7447, 2004 WL 2980085, at *4 (S.D.N.Y. Dec. 21, 2004).

4

Neither the members of the FitBit Investor Group nor the Institutional Investor Group claim to have any pre-litigation relationship. They were cobbled together by counsel solely to aggregate to the largest financial interest. Thus, neither is a proper lead plaintiff "group".

### 1. The FitBit Investor Group is a Lawyer Manufactured Group

#### a. The FitBit Investor Group Provides No Evidence of Pre-Litigation Efforts or Coordination

As noted above, many courts have held that the PSLRA's reference to "groups" of investors serving as lead plaintiff is limited to investors with a pre-litigation relationship (such as siblings or commonly managed investment funds). The FitBit Investor Group members do not even claim to have such a relationship. In fact, there is no indication in the record that the four members of this group knew one another or even that they have ever met one another prior to the filing of this motion. It appears that they are a "group" simply because each member retained one of three separate law firms that chose to file a lead plaintiff motion together.

Some courts allow lead plaintiff groups to seek lead plaintiff appointment, but those courts generally require groups to make a showing of group cohesiveness in their motion papers. *See, e.g.*, *In re Versata, Inc., Sec. Litig.*, No. 01 Civ. 1439 (SI), 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001) (Illston, J.) (appointing group of "sophisticated" but unrelated investors that submitted "declaration providing background information and articulating why the member is seeking lead plaintiff status as part of the asserted group"). Here, however, the FitBit Investor Group "ha[s] not shown how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy." *Eichenholtz*, 2008 WL 3925289, at *9.[4] As such, there is "no rationale for this grouping other than to manufacture the

---

[4] Presumably, the FitBit Investor Group will rely on *Versata* to demonstrate the adequacy of its group, but such reliance would be misplaced. In *Versata*, the Court appointed a group that included an individual investor, but that group also included two international investment management firms that provided sufficient detail of their sophistication in addition to their commitment to the litigation through a joint declaration detailing regular meeting plans, contingency plans and dispute resolution provisions that were reflective of a "cooperative spirit and awareness of the need to plan ahead." *Versata*, 2001 WL 34012374, at *6-7. Such evidence simply has not been presented by the individual movants of the FitBit Investor Group.

5

greatest financial interest in order to be appointed lead plaintiff." *Id.* at \*9 (declining to appoint group with largest losses because "it is clear that the [Group] was 'created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel' and, as such, are 'groups' of the sort district courts in this circuit and throughout the country look upon with disfavor").

Instead of providing evidence of a pre-litigation relationship among the individual group members or of detailed plans to coordinate the litigation, the individual members of the FitBit Investor Group executed *pro forma* statutory certifications months apart from one another and on different certification forms, supplied by different law firms. *See generally* ECF No. 15-2. Three of the group members executed certifications that do not indicate which specific law firm they retained. Presumably, two of them retained one of the two law firms proposed by the FitBit Investor Group as lead counsel for the class, and one retained the other of those firms. The fourth member of this group, Viet Tran executed a certification that references the retention of the Rosen Law Firm [ECF No. 15-2], a law firm that does not even appear on the FitBit Investor Group Motion papers. These certification forms also contain nary a shred of evidence that the individual movants recognized that they would be banded together as part of a group. This raises the inference that the FitBit Group members only signed up for the litigation in response to **one of the nine press releases** issued by these law firms (including the press releases issued by the Rosen Law Firm) in connection with this litigation. *See* Press Decl. Exs. 2-10. Other district courts have lamented the "'powerful incentives for lawyers competing to represent the class to solicit clients and to create misleading forms of notice under the PSLRA that prompt plaintiffs to 'volunteer' as lead plaintiffs when they think they are merely providing notice to preserve their claims.'"[5]

---

[5] *See In re Bally Total Fitness Sec. Litig.*, No. 04 Civ. 3530, 2005 U.S. Dist. LEXIS 6243, at \*8 (N.D. Ill. Mar. 15, 2005); *In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000) (noting that "firms . . . sent numerous notices over the press wire, in what other courts have described as an attempt to recruit potential plaintiffs"). Indeed, the PSLRA was enacted to curb this very type of lawyer-driven practice. *See Tsirekidze v. Syntax-Brillian Corp.*, No. 07 Civ. 2204, 2008 WL 942273, at \*4 (D. Ariz. Apr. 7, 2008) ("[C]ounsel's patent effort to solicit clients . . . runs directly contrary to the goals of the PSLRA – to reduce lawyer-driven litigation."); *In re Muni. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, No. 08 MD 1961, ECF No. 75 at 6 (D. Md. Nov. 17, 2008) ("the MMA Group does not deny that counsel commenced the collection of the Group by

6

Likewise, the FitBit Investor Group "does not explain **why** it must be represented by two firms, each of which appears independently capable of prosecuting this action." *In re Gemstar-TV Guide Intern., Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (emphasis added).[6] Thus, the fact that the FitBit Investor Group "could not work together to pick a single lead counsel and instead urge the Court to approve two different firms as co-lead counsel for this relatively straight forward matter demonstrates a lack of cohesion." *Beckman v. Ener1, Inc.*, No. 11 Civ. 5794, 2012 WL 512651, at *3 (S.D.N.Y. Feb. 15, 2012); *Arciaga v. Barrett Bus. Servs., Inc.*, No. 14 Civ. 5884, 2015 WL 791768, at *3 (W.D. Wash. Feb. 25, 2015). Indeed, "[i]t is more likely than not that the [FitBit Investor Group] is 'simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as "lead plaintiff," which can then select the equally artificial grouping of [three law firms] as '[co-]lead counsel.'" *Id.* (citing and quoting *In re Razorfish*, 143 F. Supp. 2d at 307-08).

### b. Individual FitBit Investor Group Members Cannot Belatedly Disband Into Separate Group Movants at this Point

Timothy Flynn, a member of the FitBit Investor Group, purports to have an individual loss of $1,117,674, which would be the largest individual loss among competing movants. However, Mr. Flynn cannot cure his membership in the improper FitBit Investor Group by simply disavowing his group membership at this point and claiming that he individually has the largest financial interest in the litigation. "[S]uch a 'willingness to abandon the group only suggests how

---

means of an attorney generated solicitation" which "action is hardly consistent with the PSLRA policy disfavoring lawyer driven litigation") (Press Decl., Ex. 11).

[6] *See also Nicolow v. Hewlett Packard Co.*, No. 12 Civ. 05980 (CRB), 2013 WL 792642, at *6 (N.D. Cal. Mar. 4, 2013) (noting that "the Court's skepticism of the propriety of a group leadership structure in this litigation carries over to the appointment of counsel" and rejecting lead plaintiff's selection of multiple law firms); *Schriver v. IMPAC Morg. Holdings, Inc.*, No. 06 Civ. 31, 2006 U.S. Dist. LEXIS 40607, at *28 (C.D. Cal. May 1, 2006) ("it is not apparent why the . . . Group needs to retain two law firms to represent it, either of which would appear to be sufficient in itself"); *In re Carreker Corp. Sec. Litig.*, No. 03 Civ. 0250, 2003 U.S. Dist. LEXIS 25988, at *13 (N.D. Tex. Aug. 14, 2003) (appointing multiple firms is "not in the best interest of the putative class"); *Friedman v. Rayovac Corp.*, 219 F.R.D. 603, 605-06 (W.D. Wis. 2002) (same); *In re Reliant Sec. Litig.*, No. 02 Civ. 1810, 2002 U.S. Dist. LEXIS 27777, at *10-*16 (S.D. Tex. Aug. 27, 2002) (same); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 817 (N.D. Ohio 1999) (same).

loosely it was put together.'" *See Marcus v. J.C. Penney*, No. 13 Civ. 00736, ECF No. 62 at 12 (E.D. Tex. Feb. 28, 2014) (quoting *Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D. Tex. 2009).

Indeed, courts frequently decline to "pluck" a group member with the largest aggregate loss out of an improper group and appoint them lead plaintiff if that group member had not expressed prior interest in serving as an individual class member. *See e.g., Tsirekidze*, 2008 WL 942273, at *4 (rejecting group's suggestion that court "pluck one of its top-two constituents to serve as lead plaintiff")); *Niederklein v. PCS Edventures!.com, Inc*., No. 10 Civ. 00479, 2011 WL 759553, at *8 (D. Idaho Feb. 24, 2011) (same).

Consequently, to the extent that Mr. Flynn attempts to abandon his improper group, the Court should not appoint him as an individual lead plaintiff. Even if Flynn were allowed to jettison his co-movants at this late stage, he should not be appointed, where his claimed loss ($1,117,674) is just marginally greater than that of Local 282 ($1,036,145), which is an institutional investor. *Randall v. Fifth St. Fin. Corp.*, No. 15 Civ. 7759, 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016) ("[C]ourts have declined to afford this presumption to movants—particularly individual investors—when the difference between their alleged losses and those of competing movants— particularly institutional investors—was "minimal.").[7]

---

[7] *See also Gentiva*, 281 F.R.D. at 113 ("This preference has been determinative in other cases, even when an institutional investor has a slightly lower loss than another potential lead plaintiff."); *Juliar v. Sunopta Inc.*, No. 08 Civ. 0933, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (citing *Police & Fire Ret. Sys. v. SafeNet Inc.*, No. 06 Civ. 5797, 2007 U.S. Dist. LEXIS 97959, at *6 (S.D.N.Y. Feb. 21, 2007)) ("This difference [of $40,000] is minimal and, in this case, does not overcome a presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs."); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (appointing lead plaintiff that had "slightly lower" losses than competing movant); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (ignoring slight differences in damages where movants had "roughly equal damages").

16-CV-00151 MEMORANDUM OF LAW OF MOVANT TEAMSTERS LOCAL 282 IN OPPOSITION TO COMPETING MOVANTS' MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

**2.      The Institutional Investor Group Motion Should Be Denied**

While the Institutional Investor Group purports to have an aggregate financial interest in the litigation that is larger than Local 282, each of member of the Institutional Investor Group has individual losses that are considerably smaller losses than Local 282's losses.[8]  The largest loss among Institutional Investor Group members is Local No. 8 IBEW Retirement Plan & Trust which claims to have lost $922,784.46, followed by the City of Omaha Police and Fire Retirement System with a claimed loss of $867,154.76, followed by the Chester County Employees Retirement Fund with a claimed loss of lost $252,957.67.  *See* ECF No. 27-5.  Consequently, this group, like the FitBit Investor Group, appears to be little more than a lawyer-driven amalgamation of movants designed to manufacture the largest loss.  In alternative, having requested that the Court consider their application collectively, the Institutional Investor Group arguably runs afoul of the PSLRA's prohibition on "professional" plaintiffs.

**a.      The Institutional Investor Group is Not a Proper Lead Plaintiff Group**

Like the FitBit Investor Group, the Institutional Investor Group is nothing more than an amalgam of unrelated investors (albeit institutional investors) cobbled together by their counsel for the purpose of aggregating group members' losses to create the largest financial interest.  The members of this group do not claim to have a pre-litigation relationship.  The claim that these unrelated investors somehow constitute a cohesive unit rests solely on a joint declaration that the individual group members have submitted in an attempt to explain why a group of pension funds

---

[8] Moreover, there are serious questions concerning the accuracy of Local No. 8 IBEW Retirement Plan & Trust's claimed loss.  In support of the Institutional Investor Group's motion, Local No. 8 IBEW Retirement Plan & Trust claims to have engaged in a transaction in FitBit stock on January 20, 2016 at $19.29 per share.  *See* ECF No. 27-5 at 2.  However, this price exceeds the "high" prices for that day as recorded by Bloomberg ($18.28).  *Compare* ECF No. 27-5 at 2 (Institutional Investor Group Loss Chart) *with* Press Decl. Ex. 1 (a schedule detailing the daily prices for FitBit stock during the Class Period and statutory look-back period that were obtained from Bloomberg). Likewise, the fund's February 23, 2016 transactions are listed at prices ($16.80) that exceed the "high" price provided by Bloomberg ($14.30).  Thus, it is clear that some of the trade data supplied by Local No. 8 IBEW Retirement Plan & Trust is inaccurate on its face.  Moreover, these discrepancies call into question the accuracy of Local No. 8 IBEW Retirement Plan & Trust's remaining transactions and the loss calculations derived therefrom.

located in Oklahoma, Ohio and Pennsylvania decided to band together to litigate and oversee this action. *See generally* ECF No. 27-6. The declaration is replete with boilerplate descriptors, but devoid of substantive detail. At its core, the declaration concedes that *on the same day* the City of Omaha Police and Fire Retirement System, Local No. 8 IBEW Retirement Plan & Trust and the Chester County Employees Retirement Fund moved to be appointed lead plaintiffs, the pension funds participated in their first joint organizational conference call where they discussed the merits of the litigation, their role in the litigation going forward, and their counsel's litigation track record. *Id.*

Courts have found that the type of conclusory evidence submitted by the Institutional Investor Group is inadequate and requires rejection of the group. For example, in *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187 (S.D.N.Y. 2011), the Court rejected a group that submitted a joint declaration from its members "stating that they have discussed 'protocols for managing the litigation' and 'have implemented communication procedures to enable [them] to confer via phone and/or email.'" *Id.* at 191-92. Notably, the Institutional Investor Group here likewise lacks a pre-litigation relationship and its declaration contains statements comparable to those found to be insufficient in *Pipefitters*. *Compare id. with* ECF No. 27-6 at ¶¶14-15 (noting that "we have established procedures for overseeing the progress of the litigation and communicating regularly" and "[w]e have implemented communication procedures to enable us to confer via phone and/or email on short notice"); *see also Phuong Ho v. NQ Mobile, Inc.*, No. 13 Civ. 8125, 2014 WL 1389636, at *5 (S.D.N.Y. Apr. 9, 2014); *In re CMED Sec. Litig.*, No. 11 Civ. 9297, 2012 WL 1118302, at *2 (S.D.N.Y. Apr. 2, 2012).[9]

---

[9] Any attempt by the Institutional Investor Group to rely upon this Court's *Versata* opinion would be misguided insofar as the appointed group provided detail, beyond mere boilerplate, of the individual movant's sophistication and business knowledge in addition to evidence of the movant's "cooperative spirit and awareness of the need to plan ahead." *Versata*, 2001 WL 34012374, *6-7. Moreover, the movants in *Versata* were institutions who were opposed only by a non-institutional investor, unlike here were these investors seek to aggregate in order to create a loss that is larger than a competing institutional investor (*i.e.*, Local 282).

16-CV-00151 MEMORANDUM OF LAW OF MOVANT TEAMSTERS LOCAL 282 IN OPPOSITION TO COMPETING MOVANTS' MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

Moreover, the "reasons offered for the combination are not particularly compelling." *Gentiva*, 281 F.R.D. at 119. Here, the Institutional Investor Group suggest that they "decided to join together based on [their] common interests in enhancing the stability of defined benefit plans and the reliability of information disseminated by publicly-traded corporations." *See* ECF No. 26-7 at ¶9. An almost verbatim statement was held to be insufficient evidence of the group's adequacy in *Gentiva*. *Compare id. with* 281 F.R.D. at 119 (group's declaration stated that they "'determined to explore the possibility of partnering'" because both funds "'are similarly situated sophisticated institutional investors that share common goals'" and had a "'shared belief regarding the role of corporate governance in detecting and preventing securities fraud'"); *Eichenholtz*, 2008 WL 3925289, at *26-27 (finding that group's declaration insufficiently "neglect[ed] to elucidate" wherein it claimed the members were "'sophisticated institutional investors'" with the "'capability and experience to oversee this litigation'" and had a "'significant interest in the outcome of this action'").

Ultimately, as in *Gentiva*, *Eichenholtz* and *Gemstar*, the Institutional Investor Group's declaration does not "contain any credible explanation for the group's creation" and "does not explain why joinder is necessary or beneficial to ***this*** litigation." *See Gemstar*, 209 F.R.D. at 452. Instead these limited facts suggest that the Institutional Investor Group did not decide to jointly seek appointment as lead plaintiff, but rather that they were improperly cobbled together "by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel." *Cendant*, 264 F.3d at 267. "The fact that the decision to combine . . . was made by the groups' counsel, with no apparent involvement by the group members, does not bode well for the members' ability to supervise their attorneys." *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *26 (Carney, J.); *Tsirekidze*, 2008 WL 942273, at *4 (noting that such a "formation runs directly contrary to the goals of the PSLRA – to reduce lawyer-driven litigation").

16-CV-00151 MEMORANDUM OF LAW OF MOVANT TEAMSTERS LOCAL 282 IN OPPOSITION TO COMPETING MOVANTS' MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

### b. The Institutional Investor Group Members Collectively Run Afoul of the PSLRA's Prohibition on "Professional" Plaintiffs

Even assuming arguendo if the Institutional Investor Group is considered sufficiently cohesive to constitute a single movant, their motion should still be denied because that "movant" would run afoul of the PSLRA professional plaintiff bar. Under the PSLRA, a plaintiff may not serve as lead plaintiff more than five times over three years unless the court makes a finding that appointment in excess of the presumptive limit is appropriate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(vi). Congress implemented the five-in-three rule to ensure that litigation is directed by shareholders with a real financial stake in the outcome, rather than by lawyers representing repeat players.

While some courts have waived this rule, holding that the professional plaintiff bar was not intended to apply to institutional investors,[10] other courts have applied this rule to movants who were inadequate, atypical, or when another institutional investor stood ready, willing, and able to serve as lead plaintiff. *See Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 641 (D.N.J. 2002). Moreover, as the Ninth Circuit clearly stated in *Cavanaugh*, "*Congress enacts statutes, not purposes*, and courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals." *See* 306 F.3d at 731-32. Congress explicitly prohibited a class member from serving in more than five securities class actions within a three-year period absent an exception worthy of overriding the prohibition. There is no blanket exemption within the statute for institutional investors. *See, e.g.*, *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999) (applying PSLRA professional plaintiff bar to state pension fund and noting that the statute's text "contains no flat exemption for institutional investors" and that the prospective plaintiff "ha[d] not demonstrated why it should be excepted from the ban against frequent litigants.").[11]

---

[10] *See e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2004) ("the limitation against professional plaintiffs was not designed to be applied mechanically to institutional investors.").

[11] *See also Cunha v. Hansen Nat. Corp.*, No. 08 Civ. 01249, 2009 WL 2029797, at *7 (C.D. Cal. July 13, 2009) (declining to appoint movant in violation of 5-in-3 rule and appointing "alternative institutional investor who [stood] ready and able to assume the function"); *Thompson v. Shaw Grp.,*

Here, the Institutional Investor Group is comprised of three pension funds that collectively have been appointed lead plaintiff five times over the past three years, and are currently seeking appointment in two other securities class actions besides this one.[12]  Should the Institutional Investor Group be appointed lead plaintiff here, its members would be a lead plaintiff in ***four active cases***, notwithstanding its other pending lead plaintiff motions or any other individual litigation – securities, corporate takeover, derivative, or general litigation – in which it might be involved.  Having sought appointment as a single movant group, it would be improper to disaggregate the group for purposes of considering whether the group could be labeled a "professional plaintiff".

Local 282 stands in contrast to the Institutional Investor Group.  In addition to having suffered greater losses than any member of the Institutional Investor Group, Local 282 has not served as lead plaintiff in any other action commenced in the last three years [ECF No. 32], and for reasons set forth previously [ECF No. 22] and herein, is otherwise adequate and typical under Rule 23.  Thus, the Court can confidently appoint Local 282 lead plaintiff without having any concerns regarding whether the other current litigation obligations borne by members of the Institutional

---

*Inc.*, No. 04 Civ. 1685, 2004 WL 2988503, at *7 (E.D. La. Dec. 14, 2004) (applying bar to union pension fund based on "a risk of overstretch" that could be avoid by appointing alternate institutional movant "with substantial stake in litigation") (citing *Chiaretti v. Orthodontic Ctrs. of Am., Inc.*, No. 03 Civ. 1027, 2003 U.S. Dist. LEXIS 25264, at *6 (E.D. La. Aug. 28, 2003); *Telxon*, 67 F. Supp. 2d at 821 ("The purported blanket exemption reflected in the Conference Report cannot be squared with the more limited grant of discretion contained in the statute itself.").

[12] More specifically, the City of Omaha Police and Fire Retirement System was named lead plaintiff in *In re Edwards Lifesciences Corp. Sec. Litig.*, No. 13 Civ. 01463 (C.D. Cal.) and *Parmalee v. Blucora, Inc.*, No. 14 Civ. 00706 (W.D. Wash).  *See* ECF No. 27-2.  Local No. 8 IBEW Retirement Plan & Trust was named lead plaintiff in *Local No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharm., Inc.*, No. 14 Civ. 12296 (D. Mass.).  *See* ECF No. 27-3.  Finally, Chester County Employees Retirement Fund was appointed lead plaintiff in *Bodner v. Aegerion Pharmaceuticals, Inc., et al.*, No. 14 Civ. 10105 (D. Mass.) and *Shankar v. Imperva, Inc., et al.*, No. 14 Civ. 01680 (N.D. Cal.).  *See* ECF No. 27-4.  Currently, the City of Omaha Police and Fire Retirement System is seeking lead plaintiff appointment in *Ark. Teacher Ret. Sys. v. Insulet Corp.*, No. 15 Civ. 12345 (D. Mass.).  *See* ECF No. 27-2.  Likewise, Chester County Employees Retirement Fund is seeking lead plaintiff appointment in *Lifestyle Investments, LLC v. Amicus Therapeutics, Inc., et al.*, No. 15 Civ. 07350 (D.N.J.).  *See* ECF No. 27-4.

16-CV-00151 MEMORANDUM OF LAW OF MOVANT TEAMSTERS LOCAL 282 IN OPPOSITION TO COMPETING MOVANTS' MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

Investor Group might negatively impact the group's ability to discharge its obligations to this class action.

### C. The Competing Motions of Bright Agyapong and George Diaz Should Be Denied

Competing movants Bright Agyapong and George Diaz claim significantly smaller losses than those suffered by Local 282, and thus have less at stake in the litigation. Accordingly, they fail to meet the most important requirement for appointment as lead plaintiff. In fact, under *Cavanaugh*, the competing movants' motion should not even be considered. *See* 306. F.3d at 732. ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order. . . .").

Here, because Local 282 is willing to serve and satisfies the Rule 23 requirements, the competing motions of Bright Agyapong and George Diaz claim should not be considered and their motions should be denied.

### D. Local 282 Satisfies the Requirements of Rule 23 and is not Subject to any Unique Defenses

Because the movants with purportedly larger financial interests fail to satisfy Rule 23 and/or are subject to unique defenses, "the court must repeat the inquiry . . . until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 730. Unlike the other movants, Local 282 meets the typicality and adequacy requirements. Local 282 suffered $1,036,145 in losses as a result of defendants' alleged fraud. ECF No. 23-3 at 2.

"[O]ther than pointing out its relatively low[er] financial stake in the litigation," it is unlikely that any other movant can, or would be able to, make any argument against Local 282's appointment. *Tsirekidze*, 2008 WL 942273 at *5 (appointing pension fund as lead plaintiff despite the fact that it had the smallest financial interest because it "is the first [movant] to meet [the PSLRA's] standards"). Local 282's motion should be granted.

Local 282 is an institutional investor with prior experience serving as lead plaintiff in securities class action cases. *See* ECF No. 23-2. Indeed, the Institutional Investor Group concedes "that this action will be best guided by institutional investors that are familiar with the requirements attendant upon a fiduciary." *See* ECF No. 26-7 at ¶10. Local 282 shares in the Institutional Investor Group's belief in "the role of corporate governance in detecting and preventing securities fraud". *Id.* However, because Local 282 is "a single[] organized coordinated organization", Local 282's stewardship over this action will be streamlined and not subject to intra-group disagreements that have the potential to disadvantage the class. *Enron Corp.*, 206 F.R.D. at 458; *Gentiva*, 281 F.R.D. at 120 (rejecting motion by group of pension funds and appointing single pension fund as lead plaintiff).

Moreover, numerous courts have noted that a single lead plaintiff is often the optimal choice to lead a case, particularly when competing movants suffer from adequacy and typicality failings. *See, e.g.*, *Zucker v. Zoran Corp.*, No. 06 Civ. 04843 (WHA), 2006 WL 3591156, at *2 (N.D. Cal. Dec. 11, 2006) ("Having a single lead plaintiff has in the past proven advantageous. A single lead plaintiff speaking on behalf of the class reduces potential conflicts in deciding litigation and settlement strategy."); *In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 372 (M.D.N.C. 2003) ("A single lead plaintiff could reduce expenses and facilitate the control and prosecution of this litigation.").

Local 282's adequacy is further illustrated by its selection of counsel with demonstrated success in this Circuit and throughout the country. *See Enron*, 206 F.R.D. at 458; *see also* ECF No. 23-4 (Kirby McInerney LLP Firm Resume). Based on the foregoing, Local 282's motion should be granted.

## III.    CONCLUSION

For all the foregoing reasons, Movant Teamsters Local 282 respectfully requests that the Court grant its motion and: (i) deny the respective motions of competing movants for appointment

as Lead Plaintiff and approval of Lead Counsel; (ii) appoint Teamsters Local 282 as Lead Plaintiff; and (iii) approve the Movant's selection of Kirby McInerney as Lead Counsel for the Class.

Dated: March 25, 2016

_/s/ Robert J. Gralewski, Jr._
Robert J. Gralewski, Jr. (196410)
KIRBY McINERNEY LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 398-4340
Email: rgralewski@kmllp.com
*and*
Ira M. Press (admitted *pro hac vice*)
Thomas W. Elrod (admitted *pro hac vice*)
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540
Email: ipress@kmllp.com

*Counsel for Movant and Proposed Lead
Plaintiff Teamsters Local 282 Trust Funds*

16-CV-00151 MEMORANDUM OF LAW OF MOVANT TEAMSTERS LOCAL 282 IN
OPPOSITION TO COMPETING MOVANTS' MOTIONS FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF LEAD COUNSEL