UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN H. ROBB,<br><br>    Plaintiff,<br><br>    v.<br><br>FITBIT INC., et al.,<br><br>    Defendants. | Case No. 16-cv-00151-SI<br><br>**ORDER RE: APPOINTMENT OF LEAD PLAINTIFF**<br><br>Re: Dkt. Nos. 11, 14, 22, 26 |

Now before the Court are several competing motions for appointment as lead plaintiff. Docket Nos. 11, 14, 22, 26. This matter came on for hearing on April 15, 2016. Having considered the arguments presented in the papers and at the hearing, the Court hereby GRANTS Fitbit Investor Group's motion for appointment as lead plaintiff.

**BACKGROUND**

Plaintiff Brian Robb brings this class action lawsuit for violation of the federal securities laws against defendants Fitbit, Inc., James Park, and William Zarella. He sues on behalf of all persons other than defendants who purchased or otherwise acquired Fitbit securities pursuant and/or traceable to Fitbit's June 18, 2015 initial public offering, or between June 18, 2015, and January 6, 2016, both dates inclusive. Docket No. 1 ¶ 2. He brings claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o; and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.

According to the complaint, Fitbit manufactures fitness-tracking devices. Docket No. 1 ¶ 3. Among these devices are the Fitbit Charge HR and Fitbit Surge, both of which include heart rate trackers that purport to monitor users' heart rates. *Id.* On June 18, 2015, Fitbit completed its initial public offering. *Id.* ¶ 5. On January 5, 2016, a consumer class action suit was filed in this district against Fitbit.[1] *Id.* ¶ 7 (citing *McLellan v. Fitbit, Inc.*, No. 16-cv-0036-JD). That suit alleged that Fitbit's heart rate monitoring system on the Charge HR and Surge "were dangerously inaccurate and posed serious health risks to users . . . ." *Id.* On January 6, 2016, Fitbit's stock fell $1.40, or 5.8%, to close at $22.90. *Id.* ¶ 8.

Plaintiff Robb filed this action on January 11, 2016. Docket No. 1. As required by Section 21D(a)(3)(A)(i) of the Exchange Act, a notice was published over Globe Newswire on January 11, 2016, advising class members of the existence and nature of the litigation. Docket No. 12-1. The notice set a 60-day window for class members to appear and move for appointment as lead plaintiff, by March 11, 2016. *Id.*

On March 11, 2016, the following individuals and institutions filed motions for appointment as lead plaintiff:

(1) George Diaz;

(2) Fitbit Investor Group, comprised of individuals Timothy Flynn, Jesse M. Koth and Kelley Koth, Viet Tran, and Mark Cunningham;

(3) Bright Agyapong;

(4) Teamsters Local 282 Trust Funds ("Local 282"); and

(5) Institutional Investor Group, comprised of City of Omaha Police and Fire Retirement System, Local No. 8 IBEW Retirement Plan & Trust, and Chester County Employees Retirement Fund.

Docket Nos. 11, 14, 18, 22, 26. George Diaz filed no opposition or reply. Bright Agyapong filed a notice withdrawing his motion. Docket No. 45. Plaintiff Robb has not sought to be made lead

---

[1] The complaint in this case erroneously states that the consumer suit was filed on January 6, 2016, but it notes the correct filing date of January 5 in the citation of the case. *See* Docket No. 1 ¶ 7.

plaintiff. Fitbit Investor Group, Local 282, and Institutional Investor Group filed opposition and reply briefs.[2] Of these three movants, each claims to have the largest financial interest and attacks the adequacy and typicality of the other movants.

Following the hearing, the Court ordered Fitbit Investor Group to file supplemental declarations, which it did on April 20, 2016. Docket Nos. 62, 64. Institutional Investor Group sought leave to respond, which the Court granted. Docket Nos. 65, 69. On May 2, 2016, Local 282 filed a notice of supplemental authority, and Institutional Investor Group then filed a response to the notice. Docket Nos. 68, 72.

## LEGAL STANDARD

Section 21D of the Private Securities Litigation Reform Act of 1995 ("PSLRA") is "intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class." Joint Explanatory Statement of the Committee of Conf., Conference Report on Sec. Litig. Reform, H.R. Conf. Rep. No. 104-39 at 32 (1995); s*ee generally In re Microstrategy Inc. Sec. Litig*., 110 F. Supp. 2d 427, 432-36 (E.D. Va. 2000). Under the procedures set out in the PSLRA, all proposed lead plaintiffs must submit a sworn certification setting forth certain facts designed to assure the Court that the plaintiff (i) has suffered more than a nominal loss, (ii) is not a professional litigant, and (iii) is otherwise interested and able to serve as a class representative. 15 U.S.C. § 78u-4(a)(2)(A). The plaintiff in the first lawsuit to be filed must additionally publish notice of the complaint in a widely circulated business publication within twenty days of filing the complaint. *Id*. at § 78u-4(a)(3)(A)(I). The notice must include a description of the claim and notify prospective class members that they may move within 60 days of the notice to be named lead plaintiff.

---

[2] Due to an automobile accident, Local 282 filed its opposition brief and supporting declaration shortly after the midnight filing deadline of March 25, 2016. Docket No. 44. The Court agrees with Local 282 that the other movants were not prejudiced by this delay and will consider Local 282's opposition as though timely filed.

Once applications for lead plaintiff status are closed, the district court must determine who among the movants is the "most adequate plaintiff." *Id*. at § 78u-4(a)(3)(B)(I). The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." *Id*. In the Ninth Circuit, *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002), governs lead plaintiff selection and establishes a three-step process. First, as discussed above, timely and complete notice of the action must be published. *Cavanaugh*, 306 F.3d at 729. Second, the district court considers the losses suffered by potential lead plaintiffs and selects "the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Id*. at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). Finally, the court focuses on that plaintiff to ensure that the proposed lead plaintiff "satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*. A plaintiff who satisfies the first two steps becomes the "presumptively most adequate plaintiff." *Id*. In step three, other plaintiffs have the opportunity to rebut the presumptive lead plaintiff's showing of typicality and adequacy. *Id*. (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

Once the court has designated a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id*. § 78u-4(a)(3)(B)(v). The Ninth Circuit has explained that "the district court does not select class counsel at all." *Cavanaugh*, 306 F.3d at 732. Instead, the district court generally approves the lead plaintiff's selection of counsel.

## DISCUSSION

### I. Selection of Lead Plaintiff

#### A. Financial Interest in the Litigation

Having determined, as discussed above, that publication of notice of this lawsuit was completed within the required timeframe, the Court must next determine which movant has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Three

4

movants submitted full briefing in support of their applications for lead plaintiff: Fitbit Investor Group, Local 282, and Institutional Investor Group. These are also the three movants who have claimed the largest financial interests.

The Ninth Circuit has not prescribed a particular method for calculating a plaintiff's financial interest but has directed that courts "may select accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4. Courts often look to the "Olsten-Lax" factors for guidance. *See, e.g., Richardson v. TVIA, Inc.*, No. 06-6304-RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Lax. v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)). Under this test, courts examine: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Id*. The last of these factors typically carries the most weight. *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 408 (N.D. Cal. 2012).

Here, when the claims of its investors are aggregated, Fitbit Investor Group has the largest claim under the Olsten-Lax factors.[3] First, Fitbit Investor Group states that its group collectively purchased 500,469 shares of Fitbit stock during the class period. Docket No. 15-3 at 4. By contrast, Local 282 claims to have purchased 48,058 shares of stock, and Institutional Investor Group collectively claims to have purchased 90,120 shares. Docket Nos. 23-3 at 3, 27-5 at 2-4.[4] Second, Fitbit Investor Group claims to have retained a total of 194,509 net shares during the class period. Docket No. 15-3 at 4. Local 282 asserts net shares totaling 48,058, while Institutional Investor Group claims net shares of 89,133 (based on the sale of 987 shares during the class period). Docket Nos. 23-3 at 3, 27-5 at 2-4. As to the third factor, Fitbit Investor Group has not

---

[3] By following the Olsten-Lax factors here, the Court need not consider the various figures for compensatory damages that several movants put forth in their papers.

[4] The breakdown of Institutional Investor Group's stock purchases is as follows: IBEW Local No. 8 Retirement Plan and Trust—42,300 shares; City of Omaha Police and Fireman's Retirement System—34,845 shares; and Chester County Employees Retirement Fund—12,975 shares. Docket No. 27-5 at 2-4.

1  presented its net expenditures during the class period in a readily ascertainable format. However,
2  the Court's preliminary calculations indicate that the figure exceeds $5 million. Local 282 says it
3  expended a net total of $1,789,803 during the class period. Docket No. 23-3 at 3. Institutional
4  Investor Group claims net expenditures of approximately $3,449,398.58.[5] *See* Docket No. 27-5 at
5  2-4.

6        The final and most important Olsten-Lax factor is the financial loss suffered. Fitbit
7  Investor Group claims the largest loss overall: $3,176,023. Docket No. 38 at 3-4. It also claims
8  that its member Timothy Flynn has the largest loss suffered by any individual member or movant:
9  $1,117,674. *Id*. at 3. Institutional Investor Group argues that in the aggregate it has the largest
10 loss—slightly over $2 million—and argues for disaggregation of the losses of Fitbit Investor
11 Group. Docket Nos. 26 at 5, 40 at 3. Local 282 claims to have suffered the largest loss—just over
12 or under $1 million, depending on the calculation method—if the Court disaggregates the losses of
13 both the other groups. Docket Nos. 42 at 3, 46 at 3. Importantly, all of the movants' varying
14 charts name Fitbit Investor Group as having the largest financial loss, if the losses of that group
15 are aggregated. *See* Docket Nos. 38 at 3-4, 40 at 3, 42 at 3, 46 at 3, 47 at 5, 48 at 2.

16       The Ninth Circuit has not ruled on whether groups may aggregate their financial losses in
17 order to assert the largest interest in a securities case. *See Cavanaugh*, 306 F.3d at 731 n.8
18 ("While a 'group of persons' can collectively serve as a lead plaintiff, 15 U.S.C. § 78u-
19 4(a)(3)(B)(iii)(I), we are not asked to determine whether a group can satisfy the 'largest financial
20 interest' requirement by aggregating losses."). However, the appeals court has disavowed the
21 type of "round-robin" inquiry that Local 282 seems to suggest in its briefs. *Id*. at 732. *Cavanaugh*
22 made clear that district courts are not to consider all movants simultaneously but are to follow a
23 sequential process: "The court must examine potential lead plaintiffs one at a time, starting with
24 the one who has the greatest financial interest, and continuing in descending order if and only if
25 the presumptive lead plaintiff is found inadequate or atypical." *Id*. Federal securities law

---

[5] The Court calculates this figure by adding the total cost of shares purchased and subtracting the proceeds of 127 shares of stock sold at $30.12110 and 860 shares sold at $32.42580, all transactions occurring within the class period. *See* Docket No. 27-5 at 2-4.

"provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Id*.

In this spirit, the Court finds Fitbit Investor Group is entitled to the presumption of most adequate plaintiff, if it meets the requirements of typicality and adequacy under Rule 23. Regardless of which figures are used to calculate the movants' losses, Fitbit Investor Group has the largest financial interest in the litigation. Any arguments for disaggregation will be treated as attacks on the group's adequacy and typicality and are addressed in turn below.

### B. Typicality and Adequacy

#### 1. Aggregation of Group Losses

Having determined that Fitbit Investor Group has the largest financial interest, the Court must next assess whether it "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Cavanaugh*, 306 F.3d at 730 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Both Local 282 and Institutional Investor Group attack Fitbit Investor Group as a lawyer-created group that contravenes the PSLRA's purpose of reducing lawyer-driven litigation. Local 282 urges that the Court interpret the PSLRA as allowing a group of investors to act as lead plaintiff only where the group had a preexisting relationship. Docket No. 42 at 5. Institutional Investor Group argues that Fitbit Investor Group "failed to meet the criteria for appointing a group, as set forth under this Court's decision in *Versata*."[6] Docket No. 40 at 2 (citing *In re Versata, Inc. Sec. Litig.*, No. 01-1439-SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001)). Both groups argue that Fitbit Investor Group's losses should be disaggregated.

In support of its opposition brief, on March 25, 2016, Fitbit Investor Group submitted a joint declaration signed by its members. Docket No. 38-1. Among other items, the declaration states that the individual members have discussed the responsibilities of acting as lead plaintiff,

---

[6] In *Versata*, this Court found that "under appropriate circumstances small groups, whether or not they have any pre-litigation relationship, can aggregate their financial losses." *Versata*, 2001 WL 34012374 at *6. This Court refrained, however, from imposing set criteria in order for a group to proceed as lead plaintiff. Instead, this Court found that a flexible, case-by-case inquiry was the best approach. *Id*. at *5.

7

will stay in regular communication with counsel and with each other, and will make decisions by consensus, using a majority vote as a back-stop. *Id.* ¶¶ 2, 6, 8. The group's opponents argue that the declaration is conclusory and untimely. Docket Nos. 46 at 4, 48 at 6. By way of comparison, Institutional Investor Group points to its own joint declaration, which it says demonstrates its superior fitness to lead this case. *See* Docket No. 27-6.

The Court agrees that Fitbit Investor Group's joint declaration is lacking in certain detail, but Institutional Investor Group's joint declaration does not substantially differ. The latter declaration explains who the institutional investors are and describes a conference call they held on March 11, 2016, the day they filed their motion. *See generally* Docket No. 27-6. This is not enough for Institutional Investor Group to overcome the fact that the PSLRA prefers the movant with the largest financial interest. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Moreover, neither group asserts that its members had a preexisting relationship outside of sharing common counsel. Truthfully, no one group appears to be more or less "lawyer-driven" than the other. If the Court were to disaggregate the losses of the Fitbit Investor Group, it finds that it would also be appropriate to disaggregate the losses of the Institutional Investor Group.[7]

In any event, Timothy Flynn of the Fitbit Investor Group claims the largest loss of any individual member. If disaggregating all groups' claims, Timothy Flynn states a loss of $1,117,674. Docket No. 38 at 3. This exceeds the largest loss claimed by any one member of Institutional Investor Group ($922,784, claimed by IBEW Local No. 8 Retirement Plan and Trust) or by Local 282 ($1,036,137). *See* Docket Nos. 23-3 at 1, 27-5 at 2, 4.[8] Therefore, "[t]his is not a

---

[7] As to the timeliness of Fitbit Investor Group's joint declaration, the Court finds no reason to exclude Fitbit Investor Group's joint declaration filed in support of its opposition. Briefing on the motion was ongoing, and the other groups had the opportunity to address the joint declaration in their replies and at the hearing.

[8] In its opposition and reply briefs, Institutional Investor Group put forth an alternate calculation method, citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), to argue that Timothy Flynn had a smaller loss than its group. Docket Nos. 40 at 3, 48 at 2. However, the movants disagree as to whether this calculation method is valid. Fitbit Investor Group agrees with the method used by Local 282, which still places Flynn as the individual with the largest loss. *See* Docket No. 47 at 4-5. The Court is not persuaded by Institutional Investor Group's alternative loss calculations, particularly where Timothy Flynn retained the most shares of Fitbit stock of any

case . . . in which lawyers aggregated plaintiffs in order to overcome the largest stake requirement. Rather, [Flynn] meets that requirement on his own." *See Bruce v. Suntech Power Holdings Co.*, No. 12-4061-RS, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012).[9]

The remaining information available to the Court indicates that Fitbit Investor Group can meet the adequacy and typicality requirements of Rule 23(a). At the hearing, counsel for Fitbit Investor Group provided information, later submitted through supplemental declarations, regarding the education, occupations, and investing experience of the group's members. See Docket No. 64. This information indicated that the group could adequately represent the class and that its claims are typical of those of other class members. The members of Fitbit Investor Group are sophisticated individuals with between four and 25 years of experience investing in the securities markets. Cunningham Decl. ¶ 5; Flynn Decl. ¶ 5; J. Koth Decl. ¶ 4; K. Koth Decl. ¶ 4; Tran Decl. ¶ 5. As noted above, they have discussed the requirements and responsibilities of the lead plaintiff role with each other and with counsel. Docket No. 38-1 ¶ 2. They have a plan for decision-making. *Id.* ¶ 8. Importantly, each suffered substantial losses stemming from investments in Fitbit securities, making their claims typical of those of the class at large. *See* Cunningham Decl. ¶ 5; Flynn Decl. ¶ 5; J. Koth Decl. ¶ 4; K. Koth Decl. ¶ 4; Tran Decl. ¶ 5.

The Court is not at liberty to select Local 282 or Institutional Investor Group solely because they are comprised of institutional investors. At heart, Local 282 rests its opposition on the assertion that it "has the largest loss of any single institutional movant." Docket No. 42 at 1. But this is not the standard. "Congress enacts statutes, not purposes," and it is outside the Court's power under the PSLRA to select an institutional movant over an individual one if the latter has the larger financial interest. *Cavanaugh*, 306 F.3d at 731-32.

---

single movant (75,319 shares) at the end of the class period. *See* Docket Nos. 15-3 at 4, 23-3 at 2, 27-5 at 2-4.

[9] For that reason, the Court's decision today is not inconsistent with the recent decision that Local 282 filed with the Court, wherein Judge Tigar denied lead plaintiff appointment to a group "of previously unrelated individuals" who joined together "for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *Bodri v. Gopro, Inc.*, No. 16-0232-JST, 2016 WL 1718217, at *4 (N.D. Cal. Apr. 28, 2016) (quoting *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-6140-MHP, 2008 WL 3925289, at *9 (N.D. Cal. Aug. 22, 2008)).

Nor is the Court persuaded by the complaints of Local 282 that members of Fitbit Investor Group "executed pro forma statutory certifications months apart from one another and on different certification forms, supplied by different lawyers." Docket No. 42 at 6. It is enough that Fitbit Investor Group executed the certifications required under 15 U.S.C. § 78u-4(a)(2)(A). Nothing in the PSLRA says that a group must execute all certifications on the same date or use the same certification forms. And the use of uniform certifications could just as easily be an indicator of "lawyer-driven litigation" as could certifications lacking in uniformity. Local 282's attacks on the certifications do not suffice to raise serious concerns regarding adequacy and typicality.

### 2. Concerns Regarding Viet Tran's Counsel

The briefs also raise concerns regarding Fitbit Investor Group's counsel. Member Viet Tran signed a certification in February 2016 stating that he intends to retain the Rosen Law Firm as counsel, yet this firm does not appear on the group's briefs and is not one of the two firms presently seeking appointment as co-lead counsel. Docket No. 15-2 at 8. Institutional Investor Group argues that Viet Tran cannot be part of the group because he is not represented by the proposed co-lead counsel. Docket No. 40 at 2. In reply, Fitbit Investor Group notes that its joint declaration clearly states that all members of the group have chosen to be represented by proposed co-lead counsel, Glancy Prongay & Murray LLP and Pomerantz LLP. Docket No. 47 at 7 n.6. Where Viet Tran has signed a declaration in this case expressing his desire to have the current proposed co-lead firms represent him, this point is not fatal to Fitbit Investor Group's bid for lead plaintiff.

### 3. Concerns Regarding Mark Cunningham's In-and-Out Trading

Finally, Institutional Investor Group argues that Mark Cunningham, a member of the Fitbit Investor Group, is an "in-and-out" trader who cannot meet Rule 23's typicality requirement. *See* Docket No. 40 at 2-3. "An in/out trader is one who both purchases and sells stocks during the same period of alleged price inflation [and thus] recoups at least some of the loss incurred by the

1    purchase because he both buys and sells during the period of price inflation." *Welling v. Alexy*,
2    155 F.R.D. 654, 661-62 (N.D. Cal. 1994).

3    As indicated in Fitbit Investor Group's moving papers and reiterated at the hearing,
4    Cunningham retained 61,000 shares of Fitbit stock at the end of the class period. Docket Nos. 15-
5    3 at 4, 38 at 3. Moreover, Institutional Investor Group also bought and sold shares within the class
6    period, albeit a smaller number. *See* Docket No. 27-5 at 2. Additionally, other courts have
7    certified classes and appointed in-and-out traders as class representatives in securities actions.
8    *See, e.g.*, *Welling*, 155 F.R.D. at 661-62. To meet the typicality requirement, the claims of a lead
9    plaintiff and class members need not be identical. *In re Lucent Techs., Inc. Sec. Litig.*, 194 F.R.D.
10   137, 150 (D.N.J. 2000) ("the typicality requirement is satisfied when the 'plaintiff's claim arises
11   from the same event or course of conduct that gives rise to the claims of other class members and
12   is based on the same legal theory.'") (citations omitted). "The focus of the typicality inquiry is not
13   on Plaintiff's behavior, but defendants'." *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 373
14   (D. Del. 1990). Finally, Cunningham does not seek appointment as the sole lead plaintiff but as
15   part of a group whose other members' investing activities have not been challenged. The central
16   question in this case is whether defendants made misrepresentations that artificially inflated the
17   company's stock price. There is no suggestion that defendants took any action specific to Mark
18   Cunningham that would render his claims atypical.

19   At the end of the day, the lead plaintiff must have sufficient interest in the case's outcome
20   to ensure vigorous advocacy. The Court finds no evidence of any antagonism between the
21   interests of Fitbit Investor Group and the class. The group has certified its willingness to serve as
22   representative plaintiff and has retained counsel experienced in securities class actions. As the
23   plaintiff with the largest financial stake in the litigation that meets the typicality and adequacy
24   requirements, it is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii);
25   *Cavanaugh*, 306 F.3d at 730. Institutional Investor Group and Local 282 have not rebutted that
26   presumption with proof that Fitbit Investor Group "will not fairly and adequately protect the
27   interests of the class[] or . . . is subject to unique defenses that render [Fitbit Investor Group]
28   incapable of adequately representing the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). The attacks

on Fitbit Investor Group's cohesiveness, on Tran's initial intent to retain a different law firm, and on Cunningham's trading activities simply do not constitute evidence of the group's lack of adequacy or typicality. For these reasons, the Court finds that the other movants have not successfully rebutted the presumption that Fitbit Investor Group will do a fair and adequate job as lead plaintiff. *See Cavanaugh*, 306 F.3d at 732 n.10 ("[O]nce the presumption is triggered . . . the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job.") (internal quotations omitted).

Accordingly, the Court GRANTS Fitbit Investor Group's motion for appointment as lead plaintiff.

## II.   Selection of Lead Counsel

The PSLRA states that "[t]he most adequate plaintiff shall, subject to approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). A court generally should accept the lead plaintiff's choice of counsel unless it appears necessary to appoint different counsel to "protect the interests of the class." *Id*. at § 78u-4(a)(3)(B)(iii)(II)(aa). *Cavanaugh* bars the Court from "select[ing] for the class what it considers to be the best possible lawyer . . . ." *Cavanaugh*, 306 F.3d at 732.

Fitbit Investor Group seeks the appointment of co-lead counsel Glancy Prongay & Murray LLP and Pomerantz LLP. Docket No. 38-1 ¶ 1. Local 282 argues that Fitbit Investor Group needs to explain why it seeks to involve multiple firms. Docket No. 42 at 7. The PSLRA imposes no such requirement, and courts often approve co-lead counsel where that is the representation structure the lead plaintiff has chosen. *See, e.g., City of Ann Arbor Employees' Retirement Sys., v. Accuray Inc.*, No. 09-3362-CW, at *3 (N.D. Cal. Oct. 26, 2009); *Versata*, 2001 WL 34012374 at *7.

Here, the proposed firms have presented declarations and resumes attesting to their many years of experience in the area of securities litigation and listing the numerous multi-million dollar recoveries they have achieved on behalf of defrauded investors. Docket Nos. 15-4, 15-5. The other movants have made no attacks on the firms' ability to represent the class adequately. The

12

1   Court therefore GRANTS the motion to approve as co-lead counsel the law firms of Glancy
2   Prongay & Murray LLP and Pomerantz LLP.  The Court does so with the caution, however, that if
3   a class is certified in the case, the Court has the power to award <u>reasonable</u> attorneys' fees and will
4   scrutinize those fees to ensure there were no duplication of efforts attributable to the co-lead
5   counsel arrangement.  *See* Fed. R. Civ. P. 23(h).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Fitbit Investor Group's motion for appointment as lead plaintiff and GRANTS its motion for appointment of Glancy Prongay & Murray LLP and Pomerantz LLP as co-lead counsel.  The remaining motions for appointment of lead plaintiff and lead counsel are DENIED.

**IT IS SO ORDERED**.

Dated:  May 10, 2016

_____
SUSAN ILLSTON
United States District Judge