**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray (*pro hac vice*)
Garth A. Spencer (*pro hac vice*)
230 Park Ave., Suite 530
New York, New York 10169
Telephone:     (212) 682-5340
Facsimile:     (212) 884-0988
Email:         bmurray@glancylaw.com
               gspencer@glancylaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Aatif Iqbal (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:     (212) 661-1100
Facsimile:     (212) 661-8665
Email:         mjsteven@pomlaw.com
               aiqbal@pomlaw.com

*Lead Counsel for Plaintiffs*
*[Additional counsel on signature page]*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN H. ROBB, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>FITBIT INC., JAMES PARK, WILLIAM R. ZERELLA, ERIC N. FRIEDMAN, JONATHAN D. CALLAGHAN, STEVEN MURRAY, CHRISTOPHER PAISLEY, MORGAN STANLEY & CO. LLC, DEUTSCHE BANK SECURITIES INC., and MERRILL LYNCH, PIERCE, FENNER & SMITH INC.,<br><br>                    Defendants. | No. 3:16-cv-00151-SI<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          January 19, 2018<br>Time:          10:00 a.m.<br>Judge:         Hon. Susan Illston<br>Courtroom:     1 – 17th Floor |

{00257111;19 }

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 19, 2018 at 10:00 a.m. (or as soon thereafter as the matter may be heard), at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 1, 17th Floor, San Francisco, California, before the Honorable Susan Illston, Class Representatives Timothy Flynn, Jesse M. Koth, Kelley Koth, Viet Tran, and Mark Cunningham will make an unopposed motion for an order, substantially in the form filed herewith (the "Preliminary Approval Order"): (1) preliminarily approving the proposed settlement set forth in the Stipulation and Agreement of Settlement dated December 26, 2017 (the "Stipulation"); (2) preliminarily certifying the Exchange Act Settlement Class and Securities Act Settlement Class (as defined below) (together the "Settlement Class"), replacing the Exchange Act Class and the Securities Act Class previously certified by the Court on June 21, 2017 (*see* Dkt. No. 184); (3) appointing Angeion Group as Settlement Administrator; (4) approving the proposed form and manner of disseminating notice to the Settlement Class; (5) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement and Class Counsel's application for attorneys' fees and expenses; and (6) continuing the final approval hearing, currently scheduled for April 6, 2018, to April 20, 2018, in order to allow time for notice under the Class Action Fairness Act.

This Motion is based on the following memorandum of points and authorities; the Stipulation and exhibits thereto (filed herewith); the accompanying Proposed Preliminary Approval Order (filed herewith); the Court's file in this action, and any additional evidence or argument that the Court may request.

{00257111;19 }

1

**TABLE OF CONTENTS**

2    **TABLE OF AUTHORITIES** ................................................................................................. ii

3    **MEMORANDUM OF POINTS AND AUTHORITIES** ................................................ 1

4    **I.**      **INTRODUCTION** ...................................................................................... 1

5    **II.**      **FACTUAL BACKGROUND** ..................................................................... 2

6    **III.**      **PROCEDURAL HISTORY** ...................................................................... 3

7    **IV.**      **THE SETTLEMENT** ................................................................................ 4

8    **V.**      **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL** ............. 5

9        **I.**      **Standards for Preliminary Approval** ................................................ 5

10       **II.**      **The Proposed Settlement Merits a Presumption of Fairness** ...................... 6

11       **III.**      **The Proposed Settlement Recovery Falls Within the Range of Possible Approval** .. 7

12           **A.**      **The Amount Offered in Settlement (Compared to**

13               **the Potential Total Recovery)** ................................................ 8

14           **B.**      **Strength of Plaintiffs' Case; Risk, Expense, Complexity,**

15               **and Likely Duration of Further Litigation** .................................. 10

16           **C.**      **The Extent of Discovery Completed, the Stage of the**

17               **Proceedings, and the Experience and Views of Counsel** ................. 11

18    **VI.**      **THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS** .................... 12

19    **VII.**      **THE PROPOSED NOTICE PROGRAM IS APPROPRIATE** ........................ 12

20    **VIII.**      **THE PROPOSED SCHEDULE SHOULD BE AMENDED** ........................... 14

21    **IX.**      **CONCLUSION** ....................................................................................... 15

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ................................................................................. 6

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ...................................................................................................... 5

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ....................................................................................... 8

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ......................................................................................... 9

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..................................................................................... 5

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ........................................................................................... 7

*Deaver v. Compass Bank*,
   No. 13-cv-00222-JSC, 2015 WL 4999953,
   2015 U.S. Dist. LEXIS 111170 (N.D. Cal. Aug. 21, 2015) ........................................... 6

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................................................... 5

*Hayes v. MagnaChip Semiconductor Corp.*,
   No. 14-cv-01160-JST, 2016 WL 6902856,
   2016 U.S. Dist. LEXIS 162120 (N.D. Cal. Nov. 21, 2016) ......................................... 11

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................................ 11

*In re Celera Corp. Secs. Litig.*,
   No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20, 2015) ............... 11, 14

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ....................................................................................... 11

*In re Cylink Sec. Litig.*,
   274 F. Supp. 2d 1109 (N.D. Cal. 2003) ........................................................................ 7

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................................ 12

*In re Vivendi Universal, S.A., Sec. Litig.*,
    No. 02 CIV. 5571 RJH, 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ................................. 10

*Kirkorian v. Borelli*,
    695 F. Supp. 446 (N.D. Cal. 1988) ................................................................................. 6, 12

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .............................................................................................................. 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................. 5, 8, 12

*Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................................. 12

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ........................................................................................ 14

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................................. 5

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .................................................................................................... 8

**Statutes**

15 U.S.C. § 78bb ........................................................................................................................... 9

15 U.S.C. § 78u-4(a)(7) .............................................................................................................. 13

28 U.S.C. § 1715 ......................................................................................................................... 14

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... 5, 6, 12, 13

**Other Authorities**

2 H. Newberg & A. Conte, *Newberg on Class Actions* (4th ed. 2002) ...................................... 5

*Manual for Complex Litigation (Third)* (1995) .......................................................................... 6

Michael Barclay & Frank C. Torchio, *Complex Litigation at the Millenium:
    A Comparison of Trading Models Used for Calculating Aggregate Damages in
    Securities Litigation*, 64 Law & Contemp. Probs. 105 (2001) .......................................... 9

Robert S. Peck, Rodney A. Hull, Kunal Madhukar, & Sagar Vachhani,
    *$1.4B Lost in a 'Blaze'? Reaction Creates Buying Opportunity* ...................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Class Representatives Timothy Flynn, Jesse M. Koth, Kelley Koth, Viet Tran, and Mark Cunningham, on behalf of themselves and the Settlement Class, are pleased to present, for the Court's preliminary approval, a $33 million cash settlement resolving all claims in this Action (the "Settlement"), as set forth in the Stipulation and Agreement of Settlement dated December 26, 2017 (the "Stipulation," filed herewith). Plaintiffs respectfully request that the Court initiate the approval process by entering an order, substantially in the form filed herewith (the "Preliminary Approval Order"): (1) preliminarily approving the proposed Settlement as set forth in the Stipulation; (2) preliminarily certifying the Exchange Act Settlement Class and Securities Act Settlement Class (as defined below) (together the "Settlement Class"), replacing the Exchange Act Class and the Securities Act Class previously certified by the Court on June 21, 2017 (*see* Dkt. No. 184); (3) appointing Angeion Group as Settlement Administrator; (4) approving the proposed form and manner of disseminating notice to the Settlement Class; (5) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement and Class Counsel's application for attorneys' fees and expenses; and (6) continuing the final approval hearing, currently scheduled for April 6, 2018, to April 20, 2018, in order to allow time for notice under the Class Action Fairness Act.

The proposed $33 million Settlement is not only fair, reasonable, and adequate, but is also an excellent result. As set forth in more detail below, the proposed Settlement provides the Settlement Class with almost 20% of reasonably recoverable damages—significantly better than the historical norm for settlements in securities class actions. *See, e.g.*, Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis* at 7 (2017), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis (noting that the median securities class-action settlement in 2016 was for 2.5% of estimated damages). Moreover, Plaintiffs and their counsel have a thorough understanding of the strengths and weaknesses of their claims, including the potential limitations on damages and recovery. The Settlement was reached after almost two years of litigation, including (1) an extensive investigation conducted by Class Counsel; (2) the preparation of the detailed Amended Complaint; (3) contentious motion practice with respect to Defendants' motion to

dismiss, motion for reconsideration, and motion for summary judgment, each involving a voluminous documentary record; (4) months of discovery, including review and analysis of tens of thousands of pages of documents produced by Defendants as well as by analysts and other third parties; (5) class certification; (6) extensive consultations with experts to evaluate potential damages; (7) the preparation and exchange of formal mediation statements; and (8) extensive, vigorous arm's-length settlement negotiations (including two formal mediation sessions as well as extensive interim negotiations) conducted with two experienced mediators: the Honorable Daniel Weinstein (Ret.) and Jed Melnick, Esq.

While Plaintiffs believe the merits of the case are strong, the proposed Settlement is an excellent result and is in the best interests of the Settlement Class in light of the risks and costs of litigating this Action through trial. Accordingly, Plaintiffs request preliminary approval so that notice of the proposed Settlement may be disseminated to the Settlement Class.

## II. FACTUAL BACKGROUND

This is a federal securities class action against Fitbit Inc. ("Fitbit"); certain of Fitbit's officers and directors (James Park, William R. Zerella, Eric N. Friedman, Jonathan D. Callaghan, Steven Murray, and Christopher Paisley) (the "Individual Defendants," and together with Fitbit, the "Fitbit Defendants"); and certain investment banks that served as underwriters in Fitbit's initial public offering (Morgan Stanley & Co. LLC, Deutsche Bank Securities Inc., and Merrill Lynch, Pierce, Fenner & Smith Incorporated) (the "Underwriter Defendants").

Fitbit develops, manufactures, and sells wearable fitness-tracking devices. Fitbit's products monitor a user's fitness level by tracking daily activity statistics, including steps taken, distance traveled, calories burned, and stairs climbed. In October 2014, Fitbit announced two new products featuring its new "proprietary PurePulse$^{TM}$ optical heart rate technology," which claimed to provide "continuous and automatic wrist-based heart rate tracking." Fitbit subsequently held its initial public offering ("IPO") on or about June 18, 2015 and a secondary public offering ("SPO") on or about November 13, 2015, raising net proceeds of $416 million and $82.7 million, respectively.

Plaintiffs allege that Defendants unlawfully inflated Fitbit's stock price by making materially false or misleading statements and/or failing to disclose material facts concerning the accuracy of

Fitbit's heart-rate tracking devices. Plaintiffs further allege that investors were harmed when the truth was revealed through a series of partial corrective disclosures between January 2016 and May 2016.

III. **PROCEDURAL HISTORY**

This action was filed on January 11, 2016. On May 10, 2016, the Court appointed the Fitbit Investor Group (consisting of individuals Timothy Flynn, Jesse M. Koth, Kelley Koth, Viet Tran, and Mark Cunningham) as lead plaintiff and Glancy Prongay & Murray LLP and Pomerantz LLP as co-lead counsel.

The operative Amended Complaint for Violations of the Federal Securities Laws (Dkt. No. 89) was filed on July 1, 2016. Defendants moved to dismiss, arguing that, among other things, the challenged statements were neither false nor actionable because they did not specify any particular level of accuracy of the products, the Amended Complaint failed to plead scienter, and the alleged corrective disclosures did not reveal the falsity of the challenged statements. On October 26, 2016, the Court denied Defendants' motion to dismiss (Dkt. No. 122). The Fitbit Defendants then filed a motion for reconsideration on the issue of scienter, which the Court denied on January 19, 2017 (Dkt. No. 147).

In April 2017, the Fitbit Defendants moved for summary judgment on the issue of loss causation, arguing that (1) the alleged corrective disclosures revealed no "new" information because the market already knew about inaccuracies in Fitbit's heart-rate tracking, and (2) the 53% decline in Fitbit's stock price during the Class Period was entirely attributable to confounding events, including (a) Fitbit's January 5, 2016 launch of the new Blaze fitness tracker and (b) Fitbit's February 22, 2016 release of financial guidance significantly below analyst expectations. Plaintiffs moved to stay that motion pending the completion of relevant discovery, while also arguing that Defendants' arguments were insufficient to defeat loss causation as a matter of law. Before the Court could rule on either of these motions, the parties agreed to pursue mediation, and the Court agreed to defer consideration of the motions until after mediation.

On March 3, 2017, Plaintiffs filed their motion for class certification, which Defendants did not oppose. On June 21, 2017, the Court so-ordered the parties' stipulation (Dkt. No. 184), appointing Lead Plaintiff the Fitbit Investor Group (comprised of Timothy Flynn, Jesse M. Koth and Kelley Koth, Viet Tran, and Mark Cunningham) as Class Representatives, appointing Lead Counsel Glancy Prongay & Murray LLP and Pomerantz LLP as Class Counsel, and certifying the following classes:

a.  The Exchange Act Class: all persons who purchased or otherwise acquired Fitbit securities on the open market between June 18, 2015, and May 19, 2016, both dates inclusive (the "Exchange Act Class Period"). Excluded from the Exchange Act Class are (i) Defendants and the Individual Defendants' family members; (ii) directors and officers of Fitbit and their families; (iii) any entity in which the Fitbit Defendants have or had a controlling interest; and (iv) any entity in which the Underwriter Defendants have or had a majority interest.

b.  The Securities Act Class: all persons who purchased or otherwise acquired Fitbit Class A common stock pursuant and/or traceable to the Company's initial public offering on or about June 18, 2015 (the "IPO"). Excluded from the Securities Act Class are (i) Defendants and the Individual Defendants' family members; (ii) directors and officers of Fitbit and their families; (iii) any entity in which the Fitbit Defendants have or had a controlling interest; and (iv) any entity in which the Underwriter Defendants have or had a majority interest.

Class Counsel and Defendants thereafter engaged in extensive settlement negotiations, while Plaintiffs simultaneously pursued discovery. Settlement negotiations included two mediation sessions, on August 9, 2017 and September 14, 2017, before Hon. Daniel Weinstein and Jed Melnick, Esq. of JAMS. After extensive negotiations, the parties signed the Stipulation on December 26, 2017.

## IV. THE SETTLEMENT

Under the terms of the Settlement, Defendants will cause $33 million (the "Settlement Amount") to be paid into an escrow account maintained by Huntington National Bank. Class Counsel believe that this immediate cash recovery provides a substantial benefit to the Settlement Class. The proposed Notice of Proposed Class-Action Settlement (the "Notice") informs Settlement Class Members of the Settlement terms and affords an opportunity to request exclusion from the Settlement Class or to object to the Settlement, Plan of Allocation, and/or request for attorneys' fees and expenses. The Notice will be mailed to the address of each Settlement Class Member (as identified in Fitbit's transfer records), as well as to institutional investors and banks and brokerage firms that usually maintain custodial accounts. The Summary Notice of Proposed Class-Action Settlement (the "Publication Notice") will be published on a national business newswire. A copy of the Notice,

Publication Notice, Proof of Claim and Release form ("Proof of Claim"), and Stipulation will also be posted on a website maintained by the Settlement Administrator.

## V. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

At the Settlement Hearing, the Court will have before it extensive papers submitted in support of approval of the proposed Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the litigation of this Action. At this juncture, however, the Settling Parties request only preliminary approval of the Settlement.

### I.    Standards for Preliminary Approval

"Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In evaluating a proposed class-action settlement, courts in the Ninth Circuit "put a good deal of stock in [class-action settlements that are] the product of arms-length, non-collusive, negotiated resolution." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). More explicitly, the Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). This is consistent with the broader "strong judicial policy that favors settlements," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 H. Newberg & A. Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The three-step process for approval of a class action settlement is: (1) preliminary approval; (2) dissemination of notice to the class; and (3) a settlement approval hearing where class members may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). This procedure serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of the class members' interests. *See Newberg on Class Actions* § 11.25.

Plaintiffs respectfully request that the Court take the first step in the process and grant preliminary approval to the Settlement.

## II. The Proposed Settlement Merits a Presumption of Fairness

"To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (cited in *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 4999953, at *6, 2015 U.S. Dist. LEXIS 111170, at *20 (N.D. Cal. Aug. 21, 2015)). Accordingly:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation (Third)* § 30.41 (1995).

Here, the proposed Settlement merits a presumption of fairness because it has no obvious deficiencies and the settlement recovery falls within the range of possible approval. Indeed, it is both procedurally and substantively fair—it is the product of arm's-length negotiations among well-informed and experienced counsel following almost two years of vigorous litigation, and it provides the Settlement Class with an excellent recovery.

The proposed Settlement is the product of arm's-length negotiations among counsel with extensive experience in securities class-action litigation following almost two years of vigorous litigation. Class Counsel, Pomerantz LLP and Glancy Prongray & Murray LLP, are highly experienced in federal securities class actions and had a thorough understanding of the strengths and weaknesses of the parties' respective positions before agreeing to settle. "The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). This was a hard-fought case, involving a hotly contested motion to dismiss with a voluminous documentary record, a motion for reconsideration as to scienter, and a hotly contested motion for summary judgment with an even more voluminous

documentary record. Defendants have produced tens of thousands of pages of documents, and third parties have produced hundreds of pages as well.

Settlement negotiations included two all-day mediation sessions on August 9, 2017 and September 14, 2017 before nationally regarded mediators Hon. Daniel Weinstein and Jed Melnick, Esq. of JAMS. In advance of these sessions, the parties exchanged detailed mediation statements addressing liability and damages. During the mediation sessions, both sides made adversarial presentations about the merits of Plaintiffs' claims and the defenses to those claims. The negotiations were at all times hard-fought and at arm's length, and they produced a result that the parties believe to be in their respective best interests. The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator supports the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003) ("oversight of the settlement negotiations" by former Magistrate Judge "provides every indication that those discussions were conducted at arms length"). Class Counsel thus had a thorough understanding of the action and of the strengths and weaknesses of the parties' respective positions, and have determined that the Settlement is in the best interests of the Settlement Class, especially considering the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

In addition, the Settlement has no obvious deficiencies. It provides a substantial cash recovery to the Settlement Class, and there is no preferential treatment to Plaintiffs or any other Settlement Class Members. The proposed Plan of Allocation (as set forth in the Notice) was developed by a damages expert in consultation with Class Counsel and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid claims.

## III.    The Proposed Settlement Recovery Falls Within the Range of Possible Approval

The Settlement also fares well in light of the applicable factors used in evaluating class-action settlements for final approval. These factors include: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence

of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004). The factors are non-exclusive and not all need be shown. *Id.* at 576 n.7. In fact, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525; *see, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

### A.  The Amount Offered in Settlement (Compared to the Potential Total Recovery)

With respect to the Section 10(b) claims, Plaintiffs would have attempted to recover damages at trial based on the two corrective disclosures alleged in the Amended Complaint, both of which were followed by a decline in Fitbit's stock price: (i) the January 5, 2016 filing of the Consumer Class Action; and (ii) a February 22, 2016 news report disclosing a study's findings that the Charge HR had an error rate of 14%, "bordering on dangerous."

Plaintiffs contend that a significant part of the price decline following each disclosure was attributable to the disclosure of new information correcting earlier misrepresentations, and thus recoverable as damages. However, Plaintiffs recognize and must account for the fact that some portion of these price declines was attributable to confounding information, including (i) Fitbit's disappointing January 5, 2016 launch of its new Blaze fitness tracker and (ii) Fitbit's February 22, 2016 release of financial guidance significantly below analyst expectations. Accordingly, during the litigation, Plaintiffs' damages expert calculated the maximum recoverable damages under a number of different scenarios, using a variety of methodologies for disentangling the price impact of each of these pieces of information. The parties spent much of their mediation sessions debating these calculations.

With respect to January 5, 2016, Plaintiffs' argument was that the entire day's price decline was attributable to the alleged fraud except for $1.07 per share, which was attributable to disappointment in Fitbit's new Blaze tracker.[1] With respect to February 23, 2016, Plaintiffs' argument was that 50% of the day's price decline was attributable to the alleged fraud. Accordingly, Plaintiffs' damages expert estimates that Plaintiffs' potential total recovery over the Exchange Act Class Period

---

[1] According to a SunTrust analyst report, even "[i]n the worst-case scenario, if we assume that the Blaze doesn't sell a single unit," the maximum potential impact on Fitbit would be $1.07 per share. Robert S. Peck, Rodney A. Hull, Kunal Madhukar, & Sagar Vachhani, *$1.4B Lost in a 'Blaze'? Reaction Creates Buying Opportunity*, SunTrust Robinson Humphrey, at 2 (Jan. 6, 2016).

would range between $454.7 million and $798.8 million, depending on the model used. Compared to this range, the $33 million Settlement would provide 4.1–7.3% of damages.[2]

Thus, the Settlement, measured against the best-case scenario of damages, is still fair, adequate, and reasonable. For example, the median securities class-action settlement in 2016 was for 2.5% of the estimated maximum recovery. *See* Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis* at 7 (2017), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis; *cf. City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

However, with respect to January 5, 2016, Defendants had strong arguments that Plaintiffs could not establish loss causation for any stock price decline before 2:51 p.m. that day, when the Consumer Class Action was filed. Similarly, Defendants argued that analyst commentary around the February 23, 2016 price decline focused almost entirely on Fitbit's February 22, 2016 release of financial guidance significantly below analyst expectations. In light of these challenges, Plaintiffs believe it appropriate to discount maximum recoverable damages so as to arrive at a more realistic estimate for the amount potentially recoverable at trial. If Plaintiffs were only able to recover damages based on (1) the stock price decline on January 5, 2016 after 2:51 p.m. and (2) 15% of the stock price decline on February 23, 2016, then damages would range between $169.3 million using an 80/20 multi-trader model to $179.4 million using a one-trader proportionate trading model with an acceleration factor of one.[3] Compared to this range, the $33 million Settlement provides 18.4–19.5% of reasonably recoverable damages. Compared with damages calculated under either of the two scenarios, the Settlement provides an excellent recovery.

_____

[2] The section 11 claims do not affect these damages estimates because investors cannot recover twice for the same stock price decline. *See* 15 U.S.C. § 78bb.

[3] *See generally* Michael Barclay & Frank C. Torchio, *Complex Litigation at the Millenium: A Comparison of Trading Models Used for Calculating Aggregate Damages in Securities Litigation*, 64 Law & Contemp. Probs. 105 (2001) (describing different trading models).

1    Accordingly, the immediacy and certainty of a $33 million recovery is of significant benefit to

2    the Settlement Class and strongly supports preliminary approval.

3         **B.   Strength of Plaintiffs' Case; Risk, Expense, Complexity,**

4               **and Likely Duration of Further Litigation**

5    While Plaintiffs believe their case is strong, the "risk, expense, complexity, and likely duration

6    of further litigation" were substantial. Securities-fraud cases are inherently complex and frequently take

7    an exceptionally long time to litigate, in part because they often involve significant post-trial motions

8    and appeals. *See, e.g., In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 CIV. 5571 RJH, 2012 WL

9    362028 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten

10   years after the case was filed, shareholders had still received no recovery), *reconsideration denied*, 861

11   F. Supp. 2d 262 (S.D.N.Y. 2012). The Settlement provides the Settlement Class with substantial and

12   certain relief, without the delay and expense of motion practice, discovery, trial, and post-trial

13   proceedings. If the parties did not agree to settle, they would have faced an expensive litigation process

14   with an uncertain outcome.

15   At the time of Settlement, Plaintiffs had defeated Defendants' motion to dismiss and motion for

16   reconsideration, the Court had granted class certification, and several months of discovery had taken

17   place. Defendants had moved for summary judgment on all claims on the basis of loss causation,

18   arguing that the alleged corrective disclosures revealed no "new" information and that the decline in

19   Fitbit's stock price during the Class Period was entirely attributable to confounding events. In

20   response, Plaintiffs argued that Defendants' arguments were insufficient to defeat loss causation as a

21   matter of law and also moved to stay consideration of Defendants' motion until after the completion of

22   all relevant discovery.

23   Plaintiffs believed their case was strong as to loss causation and that Defendants' arguments in

24   their motion for summary judgment were insufficient to defeat loss causation as a matter of law.

25   However, even if Plaintiffs survived summary judgment—of which there was no guarantee—and the

26   Action proceeded through discovery and trial, Plaintiffs would have faced significant obstacles

27   proving loss causation and damages at trial. Plaintiffs would have been saddled with the very difficult

28   task of proving which portion of the stock drops were related to the fraud as opposed to

1   disappointment in the Blaze or the Company's guidance. Disentangling the market's reaction to these

2   various pieces of news would have required expert testimony based on methodologies that are highly

3   contested among economists, resulting in an unpredictable and expensive "battle of the experts." *See,*

4   *e.g.*, *In re Celera Corp. Secs. Litig.*, No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408, at *17

5   (N.D. Cal. Nov. 20, 2015) (finding that this weighed in favor of settlement approval); *In re Cendant*

6   *Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) (finding no error in district court's determination "that

7   establishing damages at trial would lead to a 'battle of experts,' with each side presenting its figures to

8   the jury and with no guarantee whom the jury would believe"). At the very least, these arguments were

9   likely to impose significant limits on potential damages. And not only would *any* recovery be very

10  uncertain, considering the near-certainty of appeals, it would inevitably be delayed by years.

11      Similarly, Plaintiffs believe their case was strong with respect to falsity and scienter, in large

12  part for the reasons explained in the Court's orders denying the motions to dismiss and for

13  reconsideration. But scienter is notoriously difficult to prove in securities-fraud cases. *See, e.g.*, *Hayes*

14  *v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 WL 6902856, at *5, 2016 U.S. Dist.

15  LEXIS 162120, at *16 (N.D. Cal. Nov. 21, 2016); *In re Am. Bank Note Holographics, Inc.*, 127 F.

16  Supp. 2d 418, 426 (S.D.N.Y. 2001). A trier of fact could find that the accuracy of Fitbit's heart-rate

17  tracking was contested, with different reviewers reaching different conclusions; that the market was

18  generally aware of these differing conclusions; and that Defendants' public statements adequately

19  acknowledged the devices' limitations and otherwise fairly reflected Defendants' honest beliefs.

20          **C.  The Extent of Discovery Completed, the Stage of the Proceedings, and**

21              **the Experience and Views of Counsel**

22      Class Counsel, Pomerantz LLP and Glancy Prongay & Murray LLP, are highly experienced in

23  federal securities class actions and had a thorough understanding of the strengths and weaknesses of

24  the parties' respective positions before agreeing to settle. As noted above, this was a hard-fought case,

25  involving a hotly contested motion to dismiss with a voluminous documentary record, a motion for

26  reconsideration as to scienter, and a hotly contested motion for summary judgment with an even more

27  voluminous documentary record. Class Counsel also conducted an extensive investigation while

28  preparing the detailed Amended Complaint; prepared and served discovery requests on Defendants and

subpoenas on nonparties; reviewed tens of thousands of pages of documents produced by Defendants

as well as by analysts and other third parties; and consulted extensively with experts on class

certification and to evaluate numerous different potential damages scenarios for each alleged

corrective disclosure under a variety of different assumptions and methodologies. The strengths and

weaknesses of the parties' respective positions were also vetted through mediation with two

experienced mediators: the Honorable Daniel Weinstein (Ret.) and Jed Melnick, Esq.

Accordingly, Class Counsel's informed determination that the Settlement is in the best interest

of the Settlement Class should be afforded significant weight. *See Nat'l Rural Telecomms. Coop.*, 221

F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel . . . because 'parties

represented by competent counsel are better positioned than courts to produce a settlement that fairly

reflects each party's expected outcome in the litigation'") (citing *In re Painewebber Ltd. P'ships Litig.*,

171 F.R.D. 104, 125 (S.D.N.Y. 1997) and *Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

1995)); *see also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ("The recommendation

of experienced counsel carries significant weight in the court's determination of the reasonableness of

the settlement.").

## VI. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

As part of the Settlement, the Parties have agreed to modify the definitions of the Exchange Act

Class and the Securities Act Class, which the Court previously certified on June 21, 2017 (Dkt. No.

184). Whereas the Securities Act Class included only purchasers of Fitbit Class A common stock

pursuant and/or traceable to Fitbit's initial public offering on or about June 18, 2015 (the "IPO"), the

proposed Securities Act Settlement Class now *also* includes purchasers of Fitbit Class A common stock

pursuant and/or traceable to Fitbit's follow-on public offering on or about November 13, 2015 (the

"SPO"). In addition, the definitions of the Exchange Act Settlement Class and the Securities Act

Settlement Class (together the "Settlement Class") both now clarify that Opt-Outs are excluded.

Accordingly, the Settlement Class should be certified because, like the Exchange Act Class and

the Securities Act Class previously certified by the Court, and for the reasons set forth in Lead

Plaintiff's motion for class certification (Dkt No. 150), it meets the requirements of Rule 23.

## VII. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

The parties have negotiated the form of a Notice of Proposed Class-Action Settlement (the

"Notice") to be disseminated to the Class to notify them of the terms of the Settlement and of their

rights in connection therewith, as well as a Summary Notice of Proposed Class-Action Settlement (the "Publication Notice") to be published on a national business newswire.[4] The Notice and Publication Notice have been drafted to comply with the provisions of the Private Securities Litigation Reform Act. *See* 15 U.S.C. § 78u-4(a)(7). The Notice provides detailed information concerning (a) the proposed Settlement; (b) the nature, history, and progress of the Action; (c) the date of the Final Approval Hearing; (d) the proposed Plan of Allocation; (e) the fees and expenses to be sought by Plaintiffs' Counsel; (f) the rights of Settlement Class Members, including the procedures for filing a Proof of Claim, requesting exclusion from the Settlement Class, or objecting to the Settlement or Plan of Allocation or request for fees and expenses; and (g) how to contact Plaintiffs' Counsel, access the Court's docket, or otherwise learn more about the Action and Settlement.

Under the proposed Preliminary Approval Order, the Settlement Administrator will (1) mail the Notice and Proof of Claim to all purchasers of Fitbit Class A common stock during the Class Period, (2) post the Notice and Proof of Claim to the Settlement Administrator's website, and (3) cause the Publication Notice to be published over Business Wire. The Settlement Administrator will also make additional copies of the Notice available to nominee holders such as brokerage firms who held Company stock. Such nominee holders will be requested to forward copies of the Notice to all beneficial owners of such shares or, alternatively, to provide the Settlement Administrator with their names and addresses so the Settlement Administrator can mail them the Notice directly.

The Parties believe that providing long-form notice by mail, along with publishing summary notice by a major business newswire service and posting the Notice and Proof of Claim on the Settlement Administrator's website, is the best notice practicable under the circumstances, is typical of the notice given in other class actions, and satisfies the requirements of Rule 23 and due process. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (mail to last-known address of class members sufficient); *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408, at *13 (N.D. Cal. Nov. 20, 2015) (mailing notice, publishing summary notice, and posting on settlement-specific website sufficient). Accordingly, the Court should find that the Notice, Publication

---

[4] The Notice, Publication Notice, and Proof of Claim are attached to the Stipulation as Exhibits B, C, and D. Note that these documents currently contain blanks for dates to be ordered by the Court, which will be filled in with the appropriate dates prior to dissemination.

Notice, and the procedures for dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## VIII. THE PROPOSED SCHEDULE SHOULD BE AMENDED

On December 14, 2017, following a Case Management Conference with the parties, the Court set January 8, 2018 as the deadline for the parties to file a motion for preliminary approval of the Settlement, scheduled a hearing on January 19, 2018 to consider preliminary approval of the Settlement and a hearing on April 6, 2018 to consider final approval of the Settlement. (Dkt. No. 200.) However, under the Class Action Fairness Act ("CAFA"), a court may not grant final approval to a proposed class settlement until 90 days after certain government officials have received notice of the settlement. 28 U.S.C. § 1715. The prerequisite CAFA notice, in turn, must be served "[n]ot later than 10 days after a proposed settlement of a class action is filed in court." *Id*. This motion for preliminary approval is being filed on January 8, 2018, so if CAFA notice were not served until 10 days later, an order granting final approval could not be entered until April 18, 2018 (100 days after January 8). Therefore, the parties recommend that the final approval hearing, currently scheduled for April 6, 2018, be continued to April 20, 2018.

Accordingly, Plaintiffs propose the following schedule:

| | |
|---|---|
| Deadline for mailing Notice, publication of Publication Notice, and posting of Notice and Stipulation on Settlement website ("Notice Date") | Twenty (20) calendar days after entry of the Preliminary Approval Order |
| Deadline for Plaintiffs to file papers in support of final Settlement approval and Fee and Expense Award | Thirty-four (34) calendar days before the Settlement Hearing<br><br>March 17, 2018 |
| Objection Deadline | Seventeen (17) calendar days before the Settlement Hearing<br><br>April 3, 2018 |
| Opt-Out Deadline | Ten (10) calendar days before the Settlement Hearing<br><br>April 10, 2018 |
| Deadline for Plaintiffs to file reply papers in support of Settlement and Fee and Expense Award and in response to any objections | Seven (7) calendar days before the Settlement Hearing<br><br>April 13, 2018 |

| Deadline to submit Proofs of Claim | Five (5) calendar days before the Settlement Hearing<br>April 15, 2018 |
|---|---|
| Settlement Hearing | April 20, 2018 |

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement and enter a Preliminary Approval Order substantially in the form filed herewith.

DATED: January 8, 2018

**POMERANTZ LLP**

By: */s/ Murielle J. Steven Walsh*
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Aatif Iqbal (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:     (212) 661-1100
Facsimile:      (212) 661-8665
Email:          jalieberman@pomlaw.com
                mjsteven@pomlaw.com
                aiqbal@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom (*pro hac vice*)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:     (312) 377-1181
Facsimile:      (312) 377-1184
Email: pdahlstrom@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN #282790)
468 North Camden Drive
Beverly Hills, California 90210
Telephone:     (818) 532-6449
Email:          jpafiti@pomlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray (*pro hac vice*)
Garth A. Spencer (*pro hac vice*)
230 Park Ave., Suite 530
New York, New York 10169
Telephone:     (212) 682-5340
Facsimile:     (212) 884-0988
Email:          bmurray@glancylaw.com
                 gspencer@glancylaw.com

*Lead Counsel for Plaintiffs*