**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray (*pro hac vice*)
Garth A. Spencer (*pro hac vice*)
230 Park Ave., Suite 530
New York, New York 10169
Telephone:      (212) 682-5340
Facsimile:      (212) 884-0988
Email:          bmurray@glancylaw.com
                gspencer@glancylaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Aatif Iqbal (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:      (212) 661-1100
Facsimile:      (917) 463-1044
Email:          mjsteven@pomlaw.com
                aiqbal@pomlaw.com

*Lead Counsel for Plaintiffs*
*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN H. ROBB, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>FITBIT INC., JAMES PARK, WILLIAM R. ZERELLA, ERIC N. FRIEDMAN, JONATHAN D. CALLAGHAN, STEVEN MURRAY, CHRISTOPHER PAISLEY, MORGAN STANLEY & CO. LLC, DEUTSCHE BANK SECURITIES INC., and MERRILL LYNCH, PIERCE, FENNER & SMITH INC.,<br><br>Defendants. | No. 3:16-cv-00151-SI<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS FOR PLAINTIFFS**<br><br>Date:          April 20, 2018<br>Time:          10:00 a.m.<br>Judge:         Hon. Susan Illston<br>Courtroom:     1 – 17th Floor |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on April 20, 2018 at 10:00 a.m. or as soon thereafter as counsel may be heard, at a Settlement Fairness Hearing before the Honorable Susan Illston, United States District Judge, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 1, 17th Floor, San Francisco, California, 94102, Class Representatives Timothy Flynn, Jesse M. Koth III, Kelley S. Koth, Viet Tran, and Mark Cunningham will move for an order (1) granting an award of attorneys' fees and authorizing reimbursement of expenses; and (2) granting compensatory awards to the Class Representatives. The requested fee award, reimbursement of expenses, and Plaintiff compensatory awards are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases.

This Motion is supported by the incorporated memorandum of points and authorities; the proposed order filed herewith; the Stipulation and Agreement of Settlement dated January 18, 2018 (Dkt. No. 203) (the "Stipulation") and exhibits thereto; the declarations of Brian Murray, Murielle J. Steven Walsh, Laurence Rosen, Brian Manigault, Timothy Flynn, Jesse M. Koth III, Kelley S. Koth, Viet Tran, and Mark Cunningham; Plaintiffs' Motion for Final Approval of Settlement, Class Certification and Plan of Allocation ("Final Approval Motion"); the Court's file in this Action; and any other argument or evidence that Lead Counsel may present at the Settlement Fairness Hearing or that the Court may otherwise request.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiffs' request for an award of attorneys' fees in the amount of 25% of the Settlement Fund, payable to Co-Lead Counsel from the Settlement Fund, should be granted.

2.      Whether Lead Counsel's out-of-pocket expenses of $242,402.37 were reasonable and necessarily incurred to achieve the benefit obtained and should be reimbursed from the Settlement Fund.

3.      Whether Plaintiffs' requests for awards averaging $1,205 each ($6,025 in total), in reimbursement for their time, costs and expenses directly relating to their representation of the Settlement Class, should be granted and paid from the Settlement Fund.

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

    A.    Factual Allegations, Procedural History and Settlement Negotiations.................. 3

    B.    Specific Efforts of Lead Counsel ................................................................ 3

ARGUMENT ................................................................................................................... 6

I.    LEAD COUNSEL SHOULD BE AWARDED ATTORNEYS'
    FEES OF 25% OF THE SETTLEMENT AMOUNT FROM THE COMMON FUND .... 6

    A.    It Is Appropriate To Award a Reasonable Percentage of the
        Common Fund as Attorneys' Fees........................................................... 6

    B.    The Requested Attorneys' Fees Are Reasonable When Viewed
        Against Ninth Circuit Norms ................................................................... 9

    C.    Relevant Ninth Circuit Factors Support the Requested Fee Award ...................... 9

        1.    Lead Counsel Achieved a Favorable Result for the
            Settlement Class.......................................................................... 10

        2.    The Risks of Litigation Were High............................................... 11

        3.    The Contingent Nature of the Fee and the Financial
            Burden Carried By Counsel .......................................................... 12

        4.    The Skill Required and the Quality of the Work ..................................... 14

        5.    A Lodestar Cross-Check Shows the Fee Request Is Reasonable ............. 16

        6.    The Settlement Class's Reaction to the Fee Request
            Was Overwhelmingly Positive ..................................................... 17

II.    LEAD COUNSEL'S EXPENSES SHOULD BE AWARDED AS
    REASONABLE AND NECESSARY TO OBTAIN THE SETTLEMENT ................... 17

III.    THE REQUESTED AWARDS TO PLAINTIFFS SHOULD BE APPROVED ............ 19

CONCLUSION................................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page**

<u>STATUTES AND RULES</u>

15 U.S.C. §78u-4(a)(4) .................................................................................... 19

15 U.S.C. §78u-4(b) ......................................................................................... 6

15 U.S.C.A. §77z-1(a)(6) ................................................................................. 8

15 U.S.C.A. §78u-4(a)(6) ................................................................................. 8

Fed. R. Civ. P. 23(h) ....................................................................................... 6


<u>CASES</u>

*Abrams v. Lightolier Inc.*,
    50 F.3d 1204 (3d Cir. 1995) .................................................................... 18

*Alvarado v. Nederend*,
    No. 1:08-cv-01099 OWW DLB,
    2011 WL 1883188 (E.D. Cal. Jan. May 17, 2011) ................................. 19

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ................................................................ 13

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) ..................................................................... 13

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) .................................................................................. 8

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988),
    *aff'd sub nom.*, 899 F.2d 21 (11th Cir. 1990) ....................................... 14

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979) .................................................................... 13

*Blum v. Stenson*,
    465 U.S. 886 (1984) .................................................................................. 7

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .................................................................................. 6

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
   8 F.3d 722 (10th Cir. 1993) .................................................................................. 18

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) ................................................................................ 7

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ................................................................................ 7

*Central Railroad & Banking Co. of Ga. v. Pettus*,
   113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885) .................................................... 8

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000) ........................................................................... 17

*Destefano v. Zynga, Inc.*,
   2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ............................... 15, 17

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ............................................................................... 16

*Fogarazzo v. Lehman Bros.*,
   2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ....................................................... 11

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ................................................................................ 15

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ................................................................................ 7

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ................................................................................... 18

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ............................................................................. 13

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................. 8, 9

*In re Am. Apparel S'holder Litig.*,
   2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) .................................... 15

*In re Am. Apparel, Inc. S'holder Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) ................................................ 8, 11

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS FOR PLAINTIFFS

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................ 7, 9

*In re BP p.l.c. Sec. Litig.*,
    852 F. Supp. 2d 767 (S.D. Tex. 2012) ............................................................... 11

*In re Businessland Sec. Litig.*,
    1991 WL 427887 (N.D. Cal. June 14, 1991) ..................................................... 18

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) .................................................................. 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..................................................... 11

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................................. 14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................... 20

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .................................................................................. 7

*In re Heritage Bond Litig.*,
    233 F. App'x 627 (9th Cir. 2007) ........................................................................ 6

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) ....................................... 11, 14, 17

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
    2014 WL 6473044 (S.D. Cal. Nov. 18, 2014) .................................................... 18

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ................................................................... 11, 15

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................................... 10, 14, 18

*In re JDS Uniphase Corp. Securities Litigation*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ................................................... 13

*In re Magsafe Apple Power Adapter Litig.*,
    2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ...................................................... 18

*In re Media Vision Tech. Sec. Lit.*,
   913 F. Supp. 1362 (N.D. Cal. 1996) ........................................................... 18

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ................................................................... 17

*In Re Nat'l Health Laboratories Sec. Litig.*,
   Nos. 92–1949 & 93–1694 (S.D. Cal. Aug. 15, 1995)........................... 11

*In re OmniVision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................... 8, 11, 14, 18

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................... 18

*In re Public Service Co. of New Mexico*,
   1992 WL 278452 (S.D. Cal. July 28, 1992) ...................................... 14

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005),
   *as amended* (Feb. 25, 2005)...................................................................... 8

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................... 8

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995)......................................................................... 7

*In re Vivendi Universal, S.A., Sec. Litig.*,
   123 F. Supp. 3d 424 (S.D.N.Y. 2015) .................................................. 13

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd,* 798 F.2d 35 (2d. Cir. 1986) ...................................................... 15

*In re Washington Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"),
   19 F.3d 1291 (9th Cir. 1994) .................................................... 6, 11, 12

*In re World Trade Ctr. Disaster Site Litig.*,
   754 F.3d 114 (2d Cir. 2014) ...................................................................... 7

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ........................................................................ 7

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ......................................... 9

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS FOR PLAINTIFFS

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*,
   2012 WL 10277179 (N.D. Cal. Jan. 6, 2012) .......................................................... 18

*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235 (S.D.N.Y. 1993) ........................................................................ 18

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ................................................................................. 7

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ............................................................................... 9

*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993) ..................................................................................... 7

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948(9th Cir. 2009) ................................................................................. 19

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ............................................................................... 7

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) ......................................................................... 13, 16

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................... 19

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) ................................................................................. 7

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................. 8

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................... 7

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ................................................................................. 6

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................................................... *passim*

<u>**MISCELLANEOUS**</u>

7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane,
   *Federal Practice and Procedure* §1803, at 493-94 (2d ed. 1986)............................................. 6

Richard Posner,
   *Economic Analysis of Law*, §21.9, at 534-35 (3d ed. 1986) ...................................................... 12

Lead Plaintiffs and Class Representatives Timothy Flynn, Jesse M. Koth III, Kelley S. Koth, Viet Tran, and Mark Cunningham (together "Plaintiffs"),[1] individually and on behalf of all other members of the Settlement Class, respectfully move this Court, pursuant to Fed. R. Civ. P. 23(e), for an order: (1) granting an award of attorneys' fees equaling 25% of the $33,000,000 Settlement Fund, or $8,250,000; (2) granting reimbursement of $242,402.37 in reasonable and necessary expenses that were incurred by Plaintiffs' Counsel in prosecuting this Action; and (3) granting compensatory awards averaging $1,205 each ($6,025 in total) for Plaintiffs.

## INTRODUCTION

Lead Counsel[2] began prosecuting this action over two years ago on an entirely contingent basis.  There was no companion government case and no guarantee of a successful resolution.   Lead counsel advanced over $242,402.37 in expenses with no guarantee of reimbursement.  After two years and 6,647.3 hours in time, Lead Counsel obtained a Settlement for a gross recovery of $33 million in cash—an excellent benefit to the Settlement Class, particularly given the risks of further litigation against the Defendants in light of the Fitbit Defendants' summary judgment arguments regarding loss causation and the difficulties of proving Plaintiffs' case at trial.

As compensation for their efforts, Lead Counsel respectfully requests an award of attorneys' fees in the amount of twenty-five percent (25%) of the gross Settlement Fund (which equates to $8,250,000 and is 3% less than the 28% fee Lead Counsel said they might apply for in the Notice to the Settlement Class). This requested fee award is reasonable under the

---

[1]     Unless otherwise defined, capitalized terms herein have the same meanings as assigned in the Stipulation and Agreement of Settlement dated January 18, 2018 (Dkt No. 203) (the "Stipulation").

[2]     The Court appointed Pomerantz and GPM as co-lead counsel (Dkt No. 73). As used herein, the term "Lead Counsel" refers to Pomerantz and GPM, and for ease of reference, as required by context, also refers to work performed by The Rosen Law Firm, P.A. ("Rosen") in this Action at the direction of GPM and Pomerantz. For example, the above hour, expense and lodestar figures include work performed and expenses incurred by Rosen, as reflected in the Declaration of Laurence Rosen.

percentage-of-recovery method favored in the Ninth Circuit for common-fund cases, is consistent with the range typically awarded in similar cases in the Ninth Circuit, and justified by a lodestar cross-check.

Lead Counsel also seeks reimbursement of the out-of-pocket expenses incurred in prosecuting these claims in the total amount of $242,402.37. *See* Murray Decl. ¶34. The expenses are reasonable, were necessarily incurred as part of the successful prosecution of this Action, and are of the kind regularly reimbursed by courts within this Circuit. Significantly, they are less than the expense figure reported in the Notice, which generated no objections.

Additionally, Plaintiffs seek compensatory awards averaging $1,205 each ($6,025 in total) for their personal time and effort dedicated to prosecuting this Action, including representing the Settlement Class, overseeing Lead Counsel through periodic communications, and securing the Settlement. *See* Murray Decl. ¶40; Flynn Decl. ¶7; J. Koth Decl. ¶6; K. Koth Decl. ¶6; Tran Decl. ¶6; Cunningham Decl. ¶9. Here, too, potential compensatory awards of up to $5,000 were publicized in the Notice but generated no objections.

Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the contingency risk undertaken, and should be awarded by the Court along with compensatory awards for the Class Representatives.

Pursuant to the Preliminary Approval Order (Dkt. No. 207), copies of the long-form Notice have been disseminated to 359,136 potential Settlement Class Members and nominees. Manigault Decl. ¶ 8. The Notice stated that Lead Counsel would seek an award of attorneys' fees of up to 28% of the Settlement Fund, reimbursement of up to $250,000 in litigation expenses, and compensatory awards of up to $5,000 each for Plaintiffs. Manigault Decl. Ex. A at 1. To date, no Settlement Class Member has filed an objection to these requests.[3] Manigault Decl. ¶ 13. This overwhelmingly favorable response by the Settlement Class strongly supports

---

[3] The deadline for filing any such objection is April 3, 2018. If any objections are filed, Lead Counsel will respond by April 13, 2018.

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS FOR PLAINTIFFS

the reasonableness of the requested fee award, reimbursement of expenses, and compensatory awards.

Thus, Plaintiffs and Lead Counsel respectfully request that the Court grant this Motion.

## BACKGROUND

### A.   Factual Allegations, Procedural History and Settlement Negotiations

The relevant facts along with the procedural history and settlement negotiations are set forth in more detail in the accompanying Final Approval Brief (under the heading "Factual and Procedural Background") and in the Murray Declaration at ¶¶5-20.

### B.   Specific Efforts of Lead Counsel

In this Action, with regard to the Securities Act Claims, Plaintiffs would be required to prove that the registration statements for Fitbit's IPO and Secondary Offering contained material misstatements and omissions regarding the accuracy of Fitbit's heart-rate tracking technology. However, Defendants would be able to raise arguments that Plaintiffs would be required to refute, that (i) the drop in Fitbit's stock price was not caused by any such misstatements or omissions, and/or (ii) Defendants possessed reasonable grounds to believe the registration statements did not contain such material misstatements or omissions.

With regard to the Exchange Act Claims (which represent the majority of the damages at stake in this Action), Plaintiffs would be required to prove that (i) Defendants made false and misleading statements or omitted to disclose material facts regarding the accuracy of Fitbit's heart-rate tracking technology; (ii) Defendants did so knowing their statements or omissions to be materially false or misleading, or recklessly disregarding their materially false or misleading nature; and (iii) investors suffered injury as a result thereof.

To prosecute the Action and to work toward obtaining and presenting the proof required to prevail at trial, Lead Counsel engaged in extensive work. Among other work, Lead Counsel:

- Reviewed and analyzed Fitbit's SEC filings, press releases, quarterly earnings call transcripts, and other public statements;
- Collected and reviewed a comprehensive compilation of analyst reports and major financial news service reports on Fitbit;

- Reviewed and analyzed stock trading data and historical stock price information relating to Fitbit;

- Hired a private investigator that located and interviewed numerous former Fitbit employees as confidential witnesses with knowledge of the events relevant to the allegations in the Action;

- Consulted with economic experts in the areas of loss causation, market efficiency, and damages;

- Drafted and filed the initial complaint and the AC;

- Filed an opposition to Defendants' motions to dismiss the AC;

- Filed an opposition to the Fitbit Defendants' motion for partial reconsideration;

- Filed a motion to stay the Fitbit Defendants' motion for summary judgment;

- Filed a motion to obtain class certification;

- Created initial drafts of the Protective Order and ESI Protocol and engaged in months of negotiations with Defendants regarding the Protective Order and ESI Protocol;

- Engaged in months of discovery, including review and analysis of tens of thousands of pages of documents produced by Defendants as well as by stock analysts and other third parties;

- Engaged in numerous discussions and negotiations with counsel for the Defendants;

- Following extensive arms-length negotiations with counsel for Defendants, Lead Counsel, on behalf of the Settlement Class, obtained a favorable oral agreement in principal and committed it to a written Memorandum of Understanding to settle the Action;

- Conducted an exhaustive analysis of public documents, as well as the documents obtained in discovery, in order to assess the fairness, reasonableness and adequacy of the Settlement;

- Participated in continued negotiation efforts over months to finalize the Settlement, the Stipulation, and its Exhibits;

- Prepared the motion papers and related documents necessary to provide notice of the Settlement to Settlement Class members and to obtain preliminary approval of the Settlement;

- Obtained competing bids for claims administration work related to the Settlement before selecting the Settlement Administrator;

- Secured the services of the Escrow Agent, executed a contract for such service, and created the Settlement Escrow Account;

- Prepared for and participated in the hearing on preliminary approval of the Settlement, as well as several other hearings and conferences earlier in the litigation;

- Engaged in further discussions and negotiations with the Defendants' counsel to revise the Stipulation and its exhibits, and then finalized and re-filed the revised Stipulation and exhibits;

- Obtained preliminary approval of the Settlement, and thereafter, worked with the Settlement Administrator to effectuate notice and see the Settlement through the administration process;

- Responded to inquiries received from potential Class members following the publication and distribution of notice;

- Prepared the motion papers and related documents necessary to obtain final approval of the Settlement; and

- Will prepare for and participate in the final approval hearing on the Settlement in April 2018.

*See* Murray Decl. ¶¶23-28.

Lead Counsel's efforts to obtain the Settlement have been without compensation of any kind to date, and any potential payment of attorneys' fees is, and always has been, wholly contingent upon the result achieved. *Id.* ¶29. As compensation for these efforts, Lead Counsel respectfully requests this Court to award attorneys' fees of 25% of the Settlement Fund, plus reimbursement of $242,402 in out-of-pocket expenses incurred. Supported by ample case law, these requests are appropriate given the favorable resolution obtained for the Settlement Class.

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS FOR PLAINTIFFS

## ARGUMENT

## I.   LEAD COUNSEL SHOULD BE AWARDED ATTORNEYS' FEES OF 25% OF THE SETTLEMENT AMOUNT FROM THE COMMON FUND

It has long been recognized in this Circuit that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[The Supreme Court] has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the funds as a whole."). "The court's authority to reimburse the parties stems from the fact that the class action [device] is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803, at 493-94 (2d ed. 1986). The policy rationale for awarding attorneys' fees from the common fund is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1300 (9th Cir. 1994). The 25% fee requested here is squarely within the benchmark established by the Ninth Circuit and will fairly compensate counsel for the risks undertaken in this action.  The lodestar crosscheck confirms the fairness of the requested fee, as the multiplier is well-within the parameters in the Circuit and District, even when viewed in light of "megafund" cases.

### A.   It Is Appropriate To Award a Reasonable Percentage of the Common Fund as Attorneys' Fees

Under applicable standards, an attorney fee award must be reasonable. *See, e.g.*, 15 U.S.C. §78u-4(b); Fed. R. Civ. P. 23(h) ("[T]he court may award reasonable attorneys' fees and nontaxable costs"); *In re Heritage Bond Litig.*, 233 F. App'x 627, 631 (9th Cir. 2007). For their efforts in creating a common fund for the benefit of the Settlement Class, Lead Counsel seeks a fee of 25% of the gross Settlement Fund. The requested fee for the Settlement on behalf of the

Settlement Class is calculated based upon the Settlement Fund amount of $33,000,000 in cash, with Lead Counsel requesting 25%, or $8,250,000.

Ample precedent supports Lead Counsel's request for this percentage of the Settlement Fund. In *Blum v. Stenson*, the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed to the class." 465 U.S. 886, 900 n.16 (1984). The Ninth Circuit has expressly approved the use of the percentage of recovery method in common fund cases. *See, e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989); *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993).[4] While courts within the Ninth Circuit have discretion to choose whether to use either the percentage-of-the-fund or the lodestar plus a risk multiplier method to determine whether a request for attorneys' fees is reasonable, courts in this District often prefer a percentage-of-the-fund approach in common fund cases. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit for the class is easily quantified in common fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The rationale for compensating counsel in common fund cases on a percentage basis is sound. In *Paul, Johnson*, the Ninth Circuit explained the underlying equitable principle:

---

[4] In fact, percentage-based fee awards in common fund cases have been approved by every Circuit Court that has addressed the issue. *See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988). The Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.
>
> ***
>
> The amount of such a reward is that which is deemed "reasonable" under the circumstances.

886 F.2d at 271 (citations omitted). Use of the percentage method also decreases the burden on courts by eliminating a full-blown, detailed, and time-consuming lodestar analysis, while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989). For these reasons, use of the percentage method "appears to be dominant." *In re OmniVision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).

Moreover, using the percentage method is proper in securities fraud cases. The plain language of the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class. *See* 15 U.S.C.A. §78u-4(a)(6); 15 U.S.C.A. §77z-1(a)(6). "By using this language, 'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'" *In re Am. Apparel, Inc. S'holder Litig.*, No. CV-10-06352-MMM-JCGx, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) (quoting *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008)); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005), *as amended* (Feb. 25, 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future similar violations. Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide an effective weapon in the enforcement of the securities laws. *See generally, Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007) ("This Court has

long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC].").

**B.     The Requested Attorneys' Fees Are Reasonable When Viewed Against Ninth Circuit Norms**

The Settlement Fund consists of $33,000,000 in cash. The instant request for a 25% attorneys' fee is equal to $8,250,000 and is well within the range of such fees awarded under similar circumstances and by judges in this District.

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33.3% of the total settlement value, with 25% considered something of a benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *see also Bluetooth*, 654 F.3d at 943. However, as noted by courts, in this Circuit, in "most common fund cases, the award exceeds that [25%] benchmark." *Knight v. Red Door Salons, Inc*., No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009); *see also Activision,* 723 F. Supp. at 1377–78 ("[N]early all common fund awards range around 30%."). Therefore, Lead Counsel's request for a 25% fee award is reasonable and supported by common practice in this District and Circuit.

**C.     Relevant Ninth Circuit Factors Support the Requested Fee Award**

Relevant factors in assessing whether the requested fee percentage is appropriate include: (1) the results for the class; (2) the risks for its counsel, (3) whether the fee is within the range typically associated with cases of a similar kind; (4) the burden on plaintiffs' counsel of prosecuting the case, and (5) the difficulty of the questions presented. *See Vizcaino*, 290 F.3d at 1048-50. Here, the requested fee percentage is reasonable in light of these factors and a lodestar cross-check.

Lead Counsel aggressively prosecuted this Action with no guarantee of receiving any remuneration. Throughout this litigation, Lead Counsel has been aware of numerous risks, including the difficulty of surviving motions to dismiss and the difficulty of proving key elements of the case at summary judgment, at trial, and/or on appeal including falsity, loss causation, and damages. Furthermore, Lead Counsel was aware that the Exchange Act Claims

faced additional risks including the general difficulty of satisfying the PSLRA's heightened pleading standards for securities fraud claims, which required Plaintiffs to plead a strong inference that the Exchange Act Defendants acted knowingly or recklessly in issuing statements that were materially false or misleading.

In the face of all of these challenges, Counsel expended 6,647.3 hours in professional services and incurred $242,402.37 in out-of-pocket expenses in their efforts to litigate against the Defendants and to secure and advance the Settlement, without any compensation or reimbursement of their expenses. *See* Murray Decl. ¶¶30, 34. An attorney fee award of 25% is particularly justified here given the recovery of $33,000,000, obtained despite the obstacles posed by vigorous motions practice by sophisticated defense counsel. Accordingly, the favorable result under the circumstances, combined with the substantial risks faced by Plaintiffs and Lead Counsel, and the other factors cited herein, support the requested attorneys' fee of 25% of the Settlement amount.

### 1.     Lead Counsel Achieved a Favorable Result for the Settlement Class

Courts have recognized that the result achieved is an important factor to be considered in making a fee award. *See Vizcaino*, 290 F.3d at 1048; *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007). Here, the Settlement Fund for the Settlement consists of $33,000,000 in cash.

Notably, recovery of potentially higher damages would have depended on overcoming the Defendants' motions for summary judgment. Plaintiffs would then have had to prevail at trial, to survive any appeals, and then to collect from the Defendants. By resolving this Action against the Defendants now, Plaintiffs and Lead Counsel secured a certain and favorable recovery for the Settlement Class while avoiding these risks. Under any measure, this result is reasonable and supports the requested fee award. Indeed, fees representing a higher percentage than that requested here have been awarded by courts, including those within the Ninth Circuit, in comparably sized (and even considerably larger) securities class action settlements. *See, e.g.*, *Vizcaino*, 290 F.3d at 1052 (listing settlement amounts and percentage fee awards in "megafund" cases with settlements over $50 million, in which the three smallest securities settlements had

fee awards ranging from 27.5% to 37.1%); *id.* (citing *In Re Nat'l Health Laboratories Sec. Litig.*, Nos. 92–1949 & 93–1694 (S.D. Cal. Aug. 15, 1995) ($64 million settlement and 30% fee award)).

### 2.     The Risks of Litigation Were High

Lead Counsel undertook this litigation with substantial risk that they might not obtain any recovery for Plaintiffs and the Settlement Class, a significant factor in the award of fees. *See Omnivision*, 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-1301. As endorsed by the Ninth Circuit, the risk of litigation is an important, if not the foremost, factor in determining the attorneys' percentage fee award. *See Vizcaino*, 290 F.3d at 1048 (that the case is "fraught with risk and recovery is far from certain" is "a relevant circumstance" that courts must take into account); *see also Am. Apparel*, 2014 WL 10212865, at *21 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."). There was no parallel government action, making the contingent risk even higher.

Courts nationwide have long recognized that the risk of no recovery is substantially increased in securities class actions, which are notoriously complex and difficult to both plead and prove. *See, e.g., In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("[F]ederal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading."); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX), 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005) (class actions, and particularly securities class actions, typically involve substantial complexity); *Fogarazzo v. Lehman Bros.*, No. 03 CIV. 5194 SAS, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (securities class litigation is "notably difficult and notoriously uncertain") (citation omitted).

This litigation was no different. As described in the accompanying Final Approval Brief (under the heading "Factual and Procedural Background") and in the Murray Declaration (at ¶¶5-20), Lead Counsel navigated the challenging terrain of the PSLRA[5] by engaging in: (i) a thorough investigation of potential claims on behalf of Fitbit's investors resulting in Counsel's detailed pleading of the claims in the AC; and (ii) hard-fought litigation over Defendants' motions to dismiss, motion for reconsideration, and motion for summary judgment; all before devoting the substantial time and resources needed to secure, prepare, and seek approval of the Settlement. Even assuming Plaintiffs could have successfully overcome the Fitbit Defendants' early motion for summary judgment on loss causation issues, Lead Counsel anticipated that discovery and trial would have been highly contested. Plaintiffs would then have been required to successfully overcome likely post-trial appeals.

In sum, the obstacles faced by Plaintiffs and Lead Counsel in seeking to recover against the Defendants in this securities class action were significant, particularly given the strict pleading requirements of the PSLRA and the applicable proof requirements during the later stages of the case (and on appeal).

**3.   The Contingent Nature of the Fee and the Financial Burden Carried By Counsel**

A determination of a fair fee must include consideration of its contingent nature. It is "an established practice in the private legal market" to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, §21.9, at 534-35 (3d ed. 1986)). In fact, contingent fees that may far exceed the market value of the services, if rendered on a non-contingent basis, are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay

---

[5] Although certain heightened pleading requirements of the PSLRA do not apply to Plaintiffs' non-fraud Securities Act Claims, a significantly greater portion of the damages at issue in this Action are attributable to the fraud-based Exchange Act Claims that are subject to the PSLRA's heightened requirements.

on an hourly basis, regardless of whether they win or lose. *Id.*; *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis."). Courts have consistently recognized that the risk of receiving little or no recovery is a factor in considering an award of attorneys' fees. *Vizcaino*, 290 F.3d at 1050.

The contingent nature of the fee supports a 25% award. Lead Counsel made a substantial outlay of both time and money in this case pursuing the claims at issue, resources that could have been devoted to the prosecution of other matters, while facing the very real risk of recovering nothing. Many securities cases have been lost at trial, on post-trial motions, or on appeal. For example, in *In re JDS Uniphase Corp. Securities Litigation*, a securities class action litigated in this District, the jury issued a verdict in favor of defendants after years of litigation. No. C-02-1486-CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). In *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), the jury issued a verdict on liability in favor of plaintiffs, but the Eleventh Circuit affirmed judgment as a matter of law against the plaintiffs for lack of proof of loss causation. In *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990), the class won a $38 million jury verdict (exclusive of prejudgment interest) and a motion for judgment notwithstanding the verdict was denied; however, on appeal, the judgment was reversed and the case dismissed, inflicting a total loss after ten years of active litigation. *See also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 CIV. 5571 RJH, 123 F. Supp. 3d 424 (S.D.N.Y. 2015) (post-trial summary judgment motion of defendants granted on reliance grounds in class action securities suit that was filed 13 years earlier and  had been previously decided in plaintiffs' favor at trial).

Lead Counsel has received no compensation since this Action was filed (roughly 26 months ago) and has incurred significant litigation expenses for the benefit of the Settlement Class. Although reimbursement was not assured, Lead Counsel advanced $242,402.37 in expenses to date for the benefit of the Settlement Class. *See* Murray Decl. ¶34. Any fee award

or expense reimbursement to Lead Counsel has always been at risk and completely contingent both on the result achieved and on this Court's exercise of its discretion in making any award. Thus, this factor militates in favor of the Court granting Lead Counsel's requested award of attorneys' fees and reimbursement of out-of-pocket expenses. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) (recognizing the risk of non-payment or reimbursement of expenses as a factor weighing strongly in favor of counsel's requested fee award); *see also Vizcaino*, 290 F.3d at 1050; *Omnivision*, 559 F. Supp. 2d at 1046-47; *Immune Response*, 497 F. Supp. 2d at 1175-76.

### 4.    The Skill Required and the Quality of the Work

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047; *Knight*, 2009 WL 248367, at *6 (same). Here, the quality of Lead Counsel's work on this case is reflected in the recovery obtained, and the complex factual landscape under which it was obtained, including the Fitbit Defendants' unresolved motion for summary judgment on loss causation issues. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd sub nom.,* 899 F.2d 21 (11th Cir. 1990).

"The experience of counsel is also a factor in determining the appropriate fee award." *Heritage*, 2005 WL 1594389, at *12 (citing *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 432-33 (E.D. Pa. 2001)) (where "the court justified its fee award of one-third of a common fund based in part on the experience of counsel in litigating securities class actions."); *In re Public Service Co. of New Mexico*, No. 91-0536M, 1992 WL 278452, at *8 (S.D. Cal. July 28, 1992) (experience in complex class actions weighed in favor of fee award of one-third of common fund). Lead Counsel are experienced and skilled practitioners in the securities litigation field. *See* Murray Decl. ¶23-26 and Exhibit 5 (GPM Firm Resume); Walsh Decl. ¶5 and Exhibit A (Pomerantz Firm Resume); Rosen Decl. ¶3 and Exhibit A (Rosen Firm Resume). Throughout the conduct of this litigation Lead Counsel demonstrated considerable skill. Lead Counsel's Amended Complaint overcame motions to dismiss without requiring further amendment. Lead Counsel successfully opposed the Fitbit Defendants' motion for

reconsideration, and obtained class certification. Lead Counsel filed a substantial motion to stay consideration of the Fitbit Defendants' motion for summary judgment, which led the Parties to commence settlement negotiations. Throughout the litigation Lead Counsel demonstrated to Defendants the skill and commitment necessary to bring the case to trial. The skill demonstrated by Lead Counsel supports the requested fee.

"The difficulty of securities litigation generally – particularly the challenges presented by the PSLRA's pleading requirements – requires skilled counsel familiar with the relevant statutes and case law." *In re Am. Apparel S'holder Litig.*, No. 10-cv-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548, at *71-72 (C.D. Cal. July 28, 2014). Given the complexity of the issues presented in this Action, including material misrepresentations, scienter, loss causation, and damages, only skilled counsel who applied themselves diligently could have obtained such a favorable recovery. It is important to reward skilled counsel for pursuing difficult cases because "the stated goal in percentage fee-award cases [is] ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (internal quote omitted).

The quality and vigor of opposing counsel is relevant in evaluating the quality of the services rendered by Lead Counsel. *See, e.g., Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *59 (N.D. Cal. Feb. 11, 2016); *Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *72-73; *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."), *aff'd,* 798 F.2d 35 (2d. Cir. 1986). Here, counsel for the Defendants are prominent and highly-skilled attorneys from Morrison and Foerster LLP and O'Melveny & Myers LLP with substantial experience in defending securities class actions, who vigorously defended this Action and provided top-tier legal services to their clients.

### 5.    A Lodestar Cross-Check Shows the Fee Request Is Reasonable

As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services) with the fee request made under the percentage-of-the-fund method. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assurance Soc'y of U.S.,* 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted . . . [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

Significantly, in securities class actions it is common for lodestar figures to be adjusted upward by a sizeable multiplier to reflect a variety of factors, including the complexity of the case and the risks assumed by counsel. For example, the court in *Vizcaino* approved a fee representing a multiple of 3.65 times counsel's lodestar. *Id.* at 1051-52 (listing twenty-three shareholder settlements and the multipliers for each in which the average multiplier is 3.28); *id.* at 1051 (citing *WPPSS* for the proposition that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases"). Indeed, the Ninth Circuit has recognized that the "[risk multiplier] incentive is especially important in securities cases." *Stanger*, 812 F.3d at 741 (emphasis added).

Here, the requested 25% fee amounts to a multiplier of 2.2 on Lead Counsel's lodestar incurred in litigating the case against the Defendants and in securing and advancing the Settlement. Therefore, the lodestar cross-check confirms that the fee requested by Counsel is fair and reasonable. Additionally, Counsel's lodestar does not include the additional time and effort that they will continue to devote to the case on behalf of the Settlement Class by, for example, directing the claims administration process and final distribution, nor does it include the time spent preparing this motion seeking payment of attorneys' fees and reimbursement of expenses. Indeed, the 2.2 multiplier in this case is unquestionably reasonable when compared to frequently awarded multipliers in cases from this Circuit. *Vizcaino*, 290 F.3d at 1051, n.6; *see Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the

3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *70 ("In securities class actions in particular, courts have applied multipliers ranging from 1.25 up to 4") (collecting cases).

### 6. The Settlement Class's Reaction to the Fee Request Was Overwhelmingly Positive

Despite the 359,136 Notices and Proofs of Claim mailed to Settlement Class Members (which stated that Lead Counsel would seek a fee award of up to 28% and up to $250,000 in expenses), along with the several other methods the Settlement Administrator employed to give notice, to date, no objection to the requested 25% fee award or reimbursement of expenses has been filed. Manigault Decl. ¶¶ 5–13. Courts have recognized that "[t]he presence or absence of objections from the class is also a factor in determining the proper fee award." *Heritage*, 2005 WL 1594389, at *15-16 (holding that "the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,]" particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice"); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) (filing of only one objection despite mailed notices to over 5,250 potential class members "weighs in favor of approving the fee petition").[6]

## II. LEAD COUNSEL'S EXPENSES SHOULD BE AWARDED AS REASONABLE AND NECESSARY TO OBTAIN THE SETTLEMENT

Lead Counsel incurred out-of-pocket expenses of $242,402.37 in prosecuting this Action. *See* Murray Decl. ¶34. Such expenses consist primarily of necessary mediation costs, expert fees, investigation expenses, research costs, travel expenses, and expenses associated with necessary court filings. *See* Murray Decl., Exhibit 3.

Traditionally, Ninth Circuit "courts have awarded expenses from the litigation, in addition to a percentage of the fund." *In re Businessland Sec. Litig.*, No. C-90-20476-RFP, 1991

---

[6] Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010), which requires counsel's fee motion to be filed before the deadline for objections to afford class members the opportunity to "thoroughly examine counsel's fee motion," the deadline for filing any objections is April 3, 2018.

WL 427887, at *2 (N.D. Cal. June 14, 1991); *see, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("[L]itigation expenses make the entire action possible."). It is well-established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced for the benefit of the class. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1037 (N.D. Cal. 2008) ("Attorneys may recover from common fund created by settlement of class action their reasonable expenses that would typically be billed to paying clients in non-contingency matters."); *Immune Response,* 497 F. Supp. 2d at 1177; *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (holding that expenses are reimbursable if they would normally be billed to a client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (same); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (citation omitted).

Courts within this Circuit, including this District, have granted requests for reimbursement of expenses such as the one here. Counsel's expenses, which included "filing fees, … postage, … computer research, … and travel" fall squarely within "the types of expenses routinely charged to paying clients." *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2014 WL 6473044, at *10 (S.D. Cal. Nov. 18, 2014) (citing *In re Media Vision Tech. Sec. Lit.*, 913 F. Supp. 1362, 1367-72 (N.D. Cal. 1996)); *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. C 09-05418 RS, 2012 WL 10277179, at *9 (N.D. Cal. Jan. 6, 2012) (courts grant requests where "class counsel incurred out-of-pocket costs including, among other things: filing fees; copying, mailing, faxing and serving documents; conducting computer research; travel to hearings and mediation sessions; and expert fees); *see also In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *15 (N.D. Cal. Jan. 30, 2015) (approving request of $100,000 in expenses that included "cost of experts and

consultants, computerized research such as the use of Lexis and Westlaw, travel expenses such as airfare, meals, lodging and transportation, and costs such as photocopies, postage, filing fees, and telephone charges."); *accord Alvarado v. Nederend*, No. 1:08-cv-01099 OWW DLB, 2011 WL 1883188, at *10 (E.D. Cal. May 17, 2011).

Because the expenses were incurred with no guarantee of recovery, Counsel had a strong incentive to keep them as low as reasonably possible – and did. Indeed, total expenses of $242,402.37 are less than the $250,000 estimate contained in the Notice, which generated no objections from the Settlement Class. Each of the expenses for which Counsel seeks reimbursement was necessary to the successful prosecution of this case and is the type of expense that would have been billed to a paying client (*e.g.*, expert fees, mediation fees, postage, court filing fees, etc.). Accordingly, reimbursement of the requested expenses is reasonable and appropriate.

## III.    THE REQUESTED AWARDS TO PLAINTIFFS SHOULD BE APPROVED

The Plaintiffs also request that the Court award them the following amounts in connection with their representation of the Settlement Class:

| | |
|---|---|
| Jesse M. Koth III: | $1,425 (J. Koth Decl. ¶6); |
| Kelley S. Koth: | $1,425 (K. Koth Decl. ¶6); |
| Mark Cunningham: | $1,125 (Cunningham Decl. ¶9); |
| Timothy Flynn: | $400 (Flynn Decl. ¶7); and |
| Viet Tran: | $1,650 (Tran Decl. ¶6). |

The PSLRA allows for reimbursements to representative plaintiffs in securities class actions for "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4); *see, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003) (approving awards of $5,000 each to two class representatives of 5,400 potential class members in a settlement of $1.725 million); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Plaintiffs dedicated their personal time and effort to prosecuting the Action. They reviewed complaints and motion papers, prepared certifications in connection with the lead motion and declarations in connection with the class certification

motion, and regularly communicated with Counsel to keep apprised of developments in the case so they could fulfill their role in overseeing the litigation. They communicated with Counsel in advance of and during the settlement negotiations, regarding the risks and benefits of continued litigation versus settlement, to provide settlement authority, and to provide their approval and signoff on the Settlement. *See* Murray Decl. ¶40.

Plaintiffs have each submitted a declaration setting forth their participation in the Action, including time (ranging from four to 22 hours each) and effort devoted to, among other things: (1) reviewing pleadings; (2) providing trading records, PSLRA certifications, and declarations in support of the motion for class certification; (3) overseeing the litigation; (4) communicating with counsel about the Action; and (5) considering and approving the Settlement. *See* Flynn Decl. ¶5, 7; J. Koth Decl. ¶4, 6; K. Koth Decl. ¶4, 6; Tran Decl. ¶4, 6; Cunningham Decl. ¶4, 6.

The requested compensatory awards totaling $6,025 (on average $1,205 per Plaintiff) are fair and reasonable in comparison to award amounts routinely granted by this and other courts. *E.g.*, *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000 as incentive and for lost time).

## CONCLUSION

Lead Counsel, under the supervision of Plaintiffs, achieved a favorable recovery, especially given the Fitbit Defendants' unresolved motion for summary judgment. Lead Counsel undertook substantial risk that no recovery would ever be had, and generated a sizeable but necessary lodestar in prosecuting this Action to this point on behalf of the Settlement Class. Accordingly, Plaintiffs and Lead Counsel respectfully request that this Court award the requested attorneys' fees in the amount of 25% of the gross Settlement Fund, which would be $8,250,000. Additionally, because the $242,402.37 in expenses that Lead Counsel advanced for the benefit of the Settlement Class were reasonably necessary to the prosecution of this Action, and were the type usually billed to clients outside of a contingency payment arrangement, Plaintiffs and Lead Counsel also request that the Court grant their reimbursement in full. Finally, Plaintiffs and Lead Counsel request that the Plaintiffs be awarded the above requested amounts (totaling $6,025) for their efforts expended in this Action, without which the Settlement would

not have been achieved. To effectuate this relief, Plaintiffs and Lead Counsel respectfully request that the Court enter the Proposed Order filed herewith.

DATED: March 16, 2018

**GLANCY PRONGAY & MURRAY LLP**
*By: /s/ Brian P. Murray*
Brian P. Murray (*pro hac vice*)
Garth A. Spencer (*pro hac vice*)
230 Park Ave., Suite 530
New York, New York 10169
Telephone:       (212) 682-5340
Facsimile:        (212) 884-0988
Email:             bmurray@glancylaw.com
                      gspencer@glancylaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Aatif Iqbal (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:       (212) 661-1100
Facsimile:        (917) 463-1044
Email:             jalieberman@pomlaw.com
                      mjsteven@pomlaw.com
                      aiqbal@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom (*pro hac vice*)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:       (312) 377-1181
Facsimile:        (312) 377-1184
Email:             pdahlstrom@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN #282790)
468 North Camden Drive
Beverly Hills, California 90210
Telephone:       (818) 532-6449
Email:             jpafiti@pomlaw.com

*Lead Counsel for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on March 16, 2018.

*/s/ Brian P. Murray*
Brian P. Murray